DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiffs-Appellants Bonnie Tharp, individually and as the executor of the estate of Robert Tharp, Sr., and Robert Tharp, Jr. (collectively "Appellants") have appealed from a decision of the Summit County Court of Common Pleas that granted the motions for summary judgment filed by Defendants-Appellees Continental Casualty Company, Erie Insurance Exchange, and National Union Fire Insurance Company of Pittsburgh. This Court affirms.
 I {¶ 2} On March 9, 2001, Robert Tharp, Sr. and his wife Bonnie Tharp were driving along Waterloo Road at Manchester Road, in Akron, Ohio, when their vehicle was struck by a vehicle driven by Alec A. Berdanier ("tortfeasor"). As a result of the accident, Robert Tharp, Sr. was killed and Bonnie Tharp sustained permanent injuries. At the time of the accident, Robert and Bonnie Tharp, Sr. were not acting within the course and scope of their employment nor were they driving a vehicle owned by the corporation. The Tharp's vehicle was insured under Bonnie Tharp's name; the vehicle was insured by Nationwide Insurance Company ("Nationwide"). The tortfeasor was insured under a personal automobile liability policy with Progressive Insurance Company with policy limits of $15,000 per person and $30,000 per accident. In addition, Robert Tharp, Sr.'s employer, Coca-Cola Enterprises, Inc., maintained an uninsured and underinsured ("UM/UIM") automobile policy with Continental Casualty Company ("Continental"). Bonnie Tharp's employer, Army Navy Union Garrison #250, maintained an insurance policy with Erie Insurance Exchange ("Erie").
 {¶ 3} Appellants filed a declaratory judgment action against the tortfeasor, Continental, Erie, and Nationwide seeking: 1) UIM coverage from Nationwide in the amount of the policy limits of $100,000 per person and $300,000 per accident; 2) a declaration that Appellants were "insureds" under the Continental insurance policy pursuant toScott-Pontzer v. Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,[1]
and that they were therefore entitled to UM/UIM coverage; and 3) a declaration that Appellants were "insureds" under the Erie insurance policy pursuant to Scott-Pontzer, and that they were therefore entitled to UM/UIM coverage. Each insurance company answered Appellants' complaint. Nationwide filed a crossclaim against the tortfeasor, Continental and Erie, in which it sought a claim of subrogation against the tortfeasor and a declaration of the rights and duties of each insurance company.
 {¶ 4} After obtaining consent from Continental, Erie, and Nationwide, Appellants settled their claims against the tortfeasor for the limits of the tortfeasor's liability insurance policy.
 {¶ 5} On March 7, 2002, Continental filed a motion for summary judgment. Before the trial court could rule on Continental's motion for summary judgment, Appellants filed an amended complaint, whereby an additional party was added: National Union Fire Insurance Co. ("National Union").[2]
 {¶ 6} On March 21, 2002, Appellants filed a motion to strike, wherein they moved the trial court to strike all references indicating that Bonnie Tharp and the decedent consumed alcohol prior to the automobile accident.
 {¶ 7} On April 8, 2002, Appellants filed a motion for partial summary judgment and brief in opposition to Nationwide's motion for summary judgment. Later, on May 3, 2002, Erie filed a motion for summary judgment. Appellants filed another motion for summary judgment and replied to Erie's motion for summary judgment on May 20, 2002.
 {¶ 8} On August 21, 2002, Appellants dismissed all claims against Nationwide as a result of a settlement; later, Nationwide voluntarily dismissed its crossclaim. Nationwide filed another motion for summary judgment on the issue of priority of coverage between Nationwide, Continental, and Erie. National Union filed a motion for summary judgment on October 24, 2002. On December 17, 2002, Appellants replied to National Union's motion and filed a cross-motion for summary judgment.
 {¶ 9} On February 12, 2003, the trial court: 1) granted in part and denied in part Appellants' motion to strike; 2) granted Continental's motion for summary judgment; 3) denied Appellants' motions for partial summary judgment; 4) granted Erie's motion for summary judgment; 5) granted National Union's motion for summary judgment; and 6) denied Nationwide's motion for summary judgment on the issue of priority.
 {¶ 10} The trial court granted Continental's motion for summary judgment on the ground that although the policy Continental issued to Robert Tharp, Sr.'s employer, Coca-Cola Enterprises, Inc., qualified as a "motor vehicle liability policy" pursuant to R.C. 3937.18 and the "fronting policy" did not constitute self-insurance, there was a valid offer and rejection of the UM/UIM coverage. The trial court further found that even if Coca-Cola failed to properly reject UM/UIM coverage, Appellants were still not entitled to UM/UIM coverage because they did not qualify as "insureds." That is, Scott-Pontzer did not apply because the policy was unambiguous with respect to UM/UIM coverage for employees of Coca-Cola.
 {¶ 11} The trial court granted Erie's motion for summary judgment on the ground that, pursuant to this Court's holding in Gilcreast-Hillv. Ohio Farmer's Ins. Co., 9th Dist. No. 20983, 2002-Ohio-4524, the policy Erie issued to Bonnie Tharp's employer, Army Navy Union #250, was not an "automobile liability or motor vehicle liability policy of insurance" because it failed to specifically identify vehicles, as required by R.C. 3937.18(L).
 {¶ 12} The trial court granted National Union's motion for summary judgment on the ground that because the policy National Union issued to Coca-Cola was an excess policy, and Appellants were not entitled to UM/UIM benefits under the underlying policy (i.e., Continental's policy), Appellants were not entitled to UM/UIM coverage under the policy.
 {¶ 13} Appellants have timely appealed, asserting one assignment of error. Continental has cross-appealed, asserting one assignment of error.
 II Assignment of Error
"The trial court erred in denying appellants' motions for summary Judgment and in granting summary judgment in favor of [Continental, Erie, and National Union]."
 {¶ 14} In Appellants' sole assignment of error, they have argued that the trial court erred when it denied their motions for summary judgment and granted Continental's, Erie's and National Union's motions for summary judgment. This Court disagrees.
 {¶ 15} The appropriate appellate standard of review for an award of summary judgment is de novo. Doe v. Shaffer (2000), 90 Ohio St.3d 388,390, citing Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination. Brownv. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Thus, this Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Civ.R. 56(C); Viockv. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12, quoting Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 16} According to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence, viewed most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. See State ex rel. Howard v. Ferreri
(1994), 70 Ohio St.3d 587, 589.
 {¶ 17} To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. State ex rel.Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449.
 {¶ 18} Civ.R. 56(C) provides an exclusive list of materials which the trial court may consider on a motion for summary judgment. Spier v.American Univ. of the Caribbean (1981), 3 Ohio App.3d 28, 29. Specifically, the materials include: affidavits, depositions, transcripts of hearings in the proceedings, written admissions, written stipulations, answers to interrogatories, and the pleadings. Civ.R. 56(C). Here, Erie, National Union, and Continental relied on the insurance policies submitted with their motions for summary judgment.
 {¶ 19} For ease of discussion, this Court will separately address each insurance policy.
 Continental's insurance policy {¶ 20} With respect to Continental's insurance policy, Appellants have not challenged the trial court's finding that Continental's policy was an "automobile liability or motor vehicle liability policy of insurance" or that Coca-Cola was not a "self-insuring" entity. Rather, Appellants have argued that "[t]he trial court erred * * * in finding that there was a valid offer and rejection of UM/UIM coverage, and in finding that [they] were not insureds under the policy." Appellants have further maintained that "[t]he trial court erroneously ruled that the requirements for a valid offer and rejection of UM/UIM coverage as established in Linko v. Indemnity Ins. Co. of North America (2000),90 Ohio St.3d 445, were not applicable to [Continental's] policy because of the amendments to R.C. 3937.18 by H.B.261, effective September 3, 1997, and S.B. 57, effective November 2, 1999."
 {¶ 21} Continental, however, has argued, as it did in its motion for summary judgment, that its insurance policy is not subject to the requirements of R.C. 3937.18 because it constitutes a "fronting policy" and that Coca-Cola is therefore a "self-insuring entity."[3]
Continental has further argued that even if its policy is subject to the requirements of R.C. 3937.18, Coca-Cola validly rejected Ohio UM/UIM coverage. Continental has also maintained that Appellants do not qualify as "insureds" because the policy contains both a "Drive Other Car Coverage" endorsement and an Employee endorsement that identifies a specific class of individuals entitled to coverage and that thereforeScott-Pontzer does not apply pursuant to Westfield Ins. Co. v. Galatis,
9th Dist. No. 20784, 2002-Ohio-1502.[4]
 {¶ 22} After reviewing the language contained in Continental's policy, this Court finds that assuming, without deciding, that R.C. 3937.18
applies to Continental's policy because Coca-Cola is not a "self-insuring" entity and that Coca-Cola failed to properly reject UM/UIM coverage, Appellants are not entitled to UM/UIM benefits because a Scott-Pontzer
analysis is inapplicable to the instant matter and they are not "insureds." Contained in Continental's insurance policy is a "Business Auto Coverage Form[,]" which provides:
"Section II — Liability Coverage
"A. Coverage
"We will pay all sums an `insured' legally must pay as damages because of `bodily injury' or `property damage' to which this insurance applies, caused by an `accident' and resulting from the ownership, maintenance or use of a covered `auto.'
"* * *
"1. Who is An Insured
"The following are `insureds':
"a. You for any covered `auto'.
"b. Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
"* * *
"(2) Your `employee' if the covered `auto' is owned by that `employee' or a member of his or her household."
 {¶ 23} A later endorsement, referred to as the "Employee endorsement" and which effectively modified "Section II — Liability Coverage[,]" added the following provision to paragraph "A.1. Who Is An Insured":
"Any `employee' of yours is an `insured' while using a covered `auto' you don't own, hire, or borrow in your business or your personal affairs."
 {¶ 24} The term "insured" is defined in "Section V — Definitions" and it means "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." Furthermore, the declarations page of the insurance policy provides a "Schedule of Coverages and Covered Autos[.]" This section indicates that "`Autos' are shown as covered `autos' for a particular coverage by the entry of one or more of the symbols from the Covered Auto Section of the Business Auto Coverage Form next to the name of the coverage." The declarations page further indicates that automobiles covered for UM/UIM coverage are designated as "Symbol 6," which is described as "Owned `Autos' Subject to A Compulsory Uninsured Motorists Law[,]" Such automobiles are defined as:
"Only those autos you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those `autos' you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement."
 {¶ 25} Unlike the insurance contract at issue in Scott-Pontzer,
there is no ambiguity in determining who is entitled to UM/UIM coverage under the contract because the policy clearly identifies who is an "insured" under the policy. Pursuant to paragraph A.1. "Who Is An Insured" and the Employee endorsement the corporation and any employee driving a "covered auto" qualifies as an "insured." See Acree v. CANIns. Cos., 1st Dist. No. C-020710, 2003-Ohio-3043, at ¶ 10 (holding that an Employee endorsement, which provided that "[a]ny employee of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs[,]" sufficiently limited coverage to those persons using covered autos). Thus, this Court need not apply a Scott-Pontzer analysis. In the absence of any Scott-Pontzer
ambiguities, this Court will simply give the words and phrases contained in Continental's policy their plain and ordinary meaning. Minor v.Allstate Ins. Co., Inc. (1996), 111 Ohio App.3d 16, 20, citing State FarmAuto Ins Co. v. Rose (1991), 61 Ohio St.3d 528 . Thus, this Court interprets the Employee endorsement as stating:
"Any `employee' of [Coca-Cola] is an `insured' while using a covered `auto' [Coca-Cola does not] own, hire, or borrow in [it's] business or * * * personal affairs."
 {¶ 26} When attempting to incorporate the type of "covered auto" (i.e., the type of automobile referred to in the Employee endorsement as a "Symbol 6" automobile) described in the policy into the language contained in the Employee endorsement, a conflict arises. A mechanical reading of the Employee endorsement would result in the following impossibility:
"Any employee [of the corporation] is an insured while using a [vehicleowned by the corporation and for which UM/UIM coverage cannot be rejected]. The vehicle must be one that the corporation does not own,
hire or borrow in its business or personal affairs."
 {¶ 27} The Employee endorsement, read without regard to the definition of "Symbol 6," indicates that the corporation cannot own the vehicle the insured is driving at the time of the accident. However, the definition of "Symbol 6," indicates that the corporation must own the vehicle. The conflict that exists between the words contained in the Employee endorsement and the words contained in the definition of "Symbol 6" are confusing and an ambiguity is thereby created.
 {¶ 28} Ambiguities must be construed against the drafter of an insurance contract. See King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus. This Court notes, however, that the Ohio Supreme Court has held that "[w]hile an ambiguity is construed in favor of one who has been determined to be insured, an ambiguity in the preliminary question of whether a claimant is insured is construed in favor of the policyholder." Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 35. In attempting to construe the ambiguities in favor of the policyholder, this Court must keep in mind that "endorsements [that] create an ambiguity and must be read in pari materia to provide coverage as if [the endorsements] were part of the body of the policy." American Hardware Mut. Ins. Co. v.Mansfield Auto Truck Plaza (1984), 15 Ohio St.3d 367, 371. In other words, "in construing an insurance contract, such construction must be given as will harmonize and give effect to all its provisions, and that no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible." Stith v.Milwaukee Guardian Ins. Inc. (1988), 44 Ohio App.3d 147, 148, citingGerman Fire Ins. Co. v. Roost (1897), 55 Ohio St. 581. Accordingly, this Court construes the Employee endorsement to mean:
"Any `employee' of [Coca-Cola] is an `insured' while using a [vehicle for which UM/UIM cannot be rejected and which Coca-Cola does not] own, hire, or borrow in [its] business or * * * personal affairs."
 {¶ 29} Based upon our interpretation of the Employee endorsement, Appellants are insureds if: 1) Robert Tharp, Sr. was an employee of Coca-Cola at the time of the accident; 2) he was using a "covered auto" that is not owned, hired or borrowed by Coca-Cola; and 3) Robert Tharp, Sr. was engaged in the business or personal affairs of Coca-Cola when the accident occurred. See Air Liquide Am. Corp. v. Contiental Cas. Co.,217 F.3d 1272, 1276.
 {¶ 30} Ohio UM/UIM law allows an insured to reject UM/UIM coverage. See R.C. 3937.18. Therefore, Robert Tharp, Sr., is not an "insured" because he was not driving a "covered auto" at the time of the accident. That is, he was not driving an automobile owned by Coca-Cola that was "required to have and cannot reject" UM/UIM coverage. Because Robert Tharp, Sr. is excluded from coverage, his family members, i.e., Bonnie Tharp and Robert Tharp, Jr., are necessarily excluded from UIM coverage as well.
 {¶ 31} Continental has also argued that the "Drive Other Car Coverage" endorsement ("DOC endorsement") effectively eliminated anyScott-Pontzer ambiguities. Assuming without deciding that such a broadened-coverage form endorsement could remove any Scott-Pontzer
ambiguities, an issue not expressly decided by the Ohio Supreme Court's decision in Galatis, this Court finds that Continental's DOC endorsement failed to remove any ambiguities. The DOC endorsement does not specifically list any individuals, or even a class of individuals, in the section entitled "Name of Individual." This Court is therefore unable to determine what additional individuals are entitled to UM/UIM coverage.
 {¶ 32} Furthermore, even if this Court were to assume that the Employee endorsement failed to cure any ambiguities inherent in the policy and that Scott-Pontzer applied because the term "you" in the "Who Is An Insured" provision referred only to the corporation, Appellants are still precluded from UIM coverage based upon the Ohio Supreme Court's recent decision in Galatis.
 {¶ 33} In Galatis, the Ohio Supreme Court addressed "Ohio's law regarding whether uninsured and underinsured motorist insurance issued to a corporation may compensate an individual for a loss that was unrelated to the insured corporation." Galatis, 2003-Ohio-5849, at ¶ 2. In addressing the overwhelming problems that were created as a result of the court's prior holding in Scott-Pontzer, the Galatis court noted that an insurance policy is a contract and it discussed the basic tenets of contract law.
 {¶ 34} The court explained that "[w]hen confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." Galatis, 2003-Ohio-5849, at ¶ 11. Thus, a court must presume that the intent of the parties is reflected in the language used in the policy, which would require the court to look to the plain and ordinary meaning of the language used in the policy. Id. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Id. However, when the language is capable of more than one interpretation, it is deemed ambiguous and it then becomes the role of the fact finder to resolve any ambiguities. Id. at ¶ 13.
 {¶ 35} In a situation where the ambiguous "contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Galatis, 2003-Ohio-5849, at ¶ 13. The court further explained that this rule of interpretation has certain limitations. "Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy. Likewise, where `the plaintiff is not a party to [the] contract of insurance * * *, [the plaintiff] is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party.'" (Emphasis sic; citations omitted.) Id. at ¶ 14.
 {¶ 36} With these contract principles in mind, the Ohio Supreme Court explained that, in the insurance context, the court must construe ambiguity in favor of the insured. "A claimant, however, is not necessarily an insured. An insured can be the policyholder or another who is entitled to insurance coverage under the terms of the policy. When a court decides whether a claimant is insured under a policy, ambiguities are construed in favor of the policyholder, not the claimant." (Emphasis sic.) Id. at ¶ 34-35. The problem inherent with the decision inScott-Pontzer, the Galatis court explained, is that the court "failed to analyze how ruling that an employee is insured outside the course and scope of employment favors the policyholder. Rather, [the court] asked which construction favored the claimant." Id. at ¶ 35 (Alterations added.) In other words, the "Scott-Pontzer [court] ignored the intent of the parties to the contract. * * * The Scott-Pontzer court construed the contract in favor of neither party to the contract, preferring instead to favor an unintended third party." Id. at ¶ 39.
 {¶ 37} Extending coverage to an "unintended third party," distorts the purpose of any contract, especially a motor vehicle policy of insurance issued to a corporation. "The general intent of a motor vehicle insurance policy issued to a corporation is to insure the corporation as a legal entity against liability arising from the use of motor vehicles."Galatis, 2003-Ohio-5849, at ¶ 20, citing, 35 Ohio St.3d at 211. A policy that extends coverage to an employee working within the scope of employment provides a direct benefit to the corporation. However, a policy that extends to:
"[A]n employee's activities outside the scope of employment are not of any direct consequence to the employer as a legal entity. An employer does not risk legal or financial liability from an employee's operation of a non-business-owned motor vehicle outside the scope of employment. Consequently, uninsured motorist coverage for an employee outside the scope of employment is extraneous to the general intent of a commercial auto policy." Id. at ¶ 20.
 {¶ 38} In concluding that an "unintended third party," or in this case an employee working outside the scope of employment, was entitled to UM/UIM coverage, the Scott-Pontzer court relied on King. In King, an employee, Dale Gordon, was driving a vehicle owned by a co-worker when he suffered fatal injuries as a result of an automobile accident. Dale was working within the course and scope of employment when the accident occurred. Dale sought UIM coverage under his employer's insurance policy, but his claim was denied. He then brought a declaratory judgment action against his employer, but the trial court and appellate court found that Dale was not entitled to UIM benefits. On appeal, the Ohio Supreme Court had to determine "whether underinsured motorist coverage provided in an employer's insurance policy extends to a deceased employee whose fatal injuries were sustained in the course of employment as the result of an automobile accident with an underinsured motorist, where the employee was not listed as a designated driver nor was he in an auto named under the policy issued to his employer." Id. at 209.
 {¶ 39} The King court found that Dale, although not specifically listed in the employer's insurance policy, was entitled to UIM coverage. This decision was based on the fact that the insurance policy was ambiguous because the term "you," referred only to the corporation. The court found that when the name of the corporation was inserted wherever the terms "you" or "your" were used, for example in the phrase "relatives living in your household," the ordinary meaning of the words and phrases became "manifestly absurd." Id. at 212. Therefore, the King court found that, in the context of the insurance policy as a whole, the term "you" and "your" referred to the corporation and its employees working within the scope of employment.
 {¶ 40} The Ohio Supreme Court explained that its prior decision inScott-Pontzer, and later in Ezawa v. Yasuda Fire Marine Ins. Co. ofAm. (1999), 86 Ohio St.3d 557, took a wrong turn when it attempted to analyze King. In King, the Galatis court explained, the employee was entitled to insurance benefits under the employer's insurance policyonly because the employee was occupying a vehicle operated by the corporation. That is, the employee was acting "on behalf of" the corporation while operating the vehicle; thus the King court equated the employee to the corporation for the purpose of work-related activities and injuries. Galatis, 2003-Ohio-5849, at ¶ 31. Accordingly, the decision in King does not stand for the proposition that any employee is entitled to coverage under his employer's insurance carrier. TheScott-Pontzer court misinterpreted the holding in King because theScott-Pontzer court confused the employee's status as an individual with the employee's status as an agent of the corporation. Id. at ¶ 32.
 {¶ 41} Despite the Scott-Pontzer court's illogical decision to extend an employer's UM/UIM coverage to an employee not working within the scope of employment, the Galatis court held that the decision inScott-Pontzer was correct "to the extent that it held that an employee in the scope of employment qualifies as `you' as used in [the employer's insurance policy], and thus, is entitled to uninsured motorist coverage." Id. at ¶ 31. Therefore, "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Id. ¶ at 62. The Court further overruled its prior holding in Ezawa and held that "where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as `other insureds' does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured." Id. at 62.
 {¶ 42} In accordance with Galatis, we find that Robert Tharp, Sr. is not entitled to coverage because it is undisputed that he was not working within the course and scope of employment when the accident occurred and pursuant to Galatis he is therefore not entitled to UIM benefits because he is not an "insured".[5] Because Robert Tharp, Sr. is not an "insured," we also find that his family members do not qualify as "insureds" and thus are not entitled to UIM coverage under Continental's insurance policy as well. Consequently, we find that the trial court did not err when it granted Continental's motion for summary judgment.
 Erie's Insurance Policy {¶ 43} With respect to Erie's insurance policy, Appellants have argued that the trial court erred in granting Erie's motion for summary judgment because the insurance policy issued to Bonnie Tharp's employer, Army Navy Union #250, was an "automobile liability or motor vehicle liability policy of insurance" pursuant to R.C. 3937.18(L)(1).[6] The policy, Appellants have argued, contained an endorsement entitled "Non-owned Automobile and/or Hired Automobile Liability Insurance" (referred to as "`non-owned and hired automobile' endorsement") that effectively transformed the policy into a "motor vehicle liability policy of insurance." Such a policy, Appellants have asserted, is subject to the requirements of R.C. 3937.18 and Erie was therefore required to provide UM/UIM coverage unless specifically rejected. See R.C. 3937.18(C).
 {¶ 44} The definition of "automobile liability or motor vehicle liability policy of insurance" is contained in R.C. 3937.18(L), which provides:
"As used in this section, "automobile liability or motor vehicle liability policy of insurance" means * * *:
"(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by [R.C.4509.01(K)], for owners or operators of the motor vehicles specificallyidentified in the policy of insurance[.]" (Emphasis added.)
 {¶ 45} Further, "proof of financial responsibility" is defined as:
"[P]roof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twelve thousand five hundred dollars because of bodily injury to or death of one person in any one accident, in the amount of twenty-five thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of seven thousand five hundred dollars because of injury to property of others in any one accident." R.C. 4509.01(K)
 {¶ 46} According to R.C. 3937.18(L) and R.C. 4509.01(K), an insurance policy may be deemed an "automobile liability or motor vehicle liability" policy if the "policy * * * [serves] as proof of financial responsibility for owners or operators of the motor vehicles specificallyidentified in the policy." (Emphasis sic.) Gilcreast-Hill v. Ohio FarmersIns. Co., 9th Dist. No. 20983, 2002-Ohio-4524, at ¶ 19. If the policy is not an "automobile liability or motor vehicle liability policy" then R.C. 3937.18 does not apply, and Erie was not required to offer UM/UIM coverage.
 {¶ 47} This Court has previously addressed the application of R.C.3937.18(L) to insurance policies which contain provisions that provide a limited form of liability coverage for a narrow class of automobiles that have not been specifically identified in the policy (i.e., non-owned, loaned, or hired automobiles). In Gilcreast-Hill, an employee, Felicia Gilcreast-Hill, attempted to submit an underinsured motorist claim under the commercial general liability policy that her employer maintained with Ohio Farmers Insurance Company. Ohio Farmers denied the claim and Gilcreast-Hill brought a declaratory judgment action against the insurer seeking UIM benefits. Ohio Farmers moved for summary judgment and the trial court granted the motion on the ground that the insurance policy was not an "automobile liability or motor vehicle liability policy of insurance" because the policy did not identify a single individual automobile for which UM/UIM coverage was applicable to employees or automobiles used outside the scope of employment. Gilcreast-Hill,
2002-Ohio-4524, at ¶ 4. The trial court also found that the policy did not serve as proof of financial responsibility for Gilcreast-Hill, and, therefore, there was no requirement to offer UM/UIM coverage. Id.
 {¶ 48} On appeal, this Court affirmed the decision of the trial court. We found that the Ohio Farmer's insurance policy excluded coverage for "`Bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, `auto' or watercraft owned or operated by or rented or loaned to any insured."Gilcreast-Hill, 2002-Ohio-4524, at ¶ 20. However, the policy provided an exception to this general exclusion; the exclusion did not apply to "parking an `auto' on, or on the ways next to, premises you own or rent, provided the `auto' is not owned by or rented or loaned to you or the insured[.]" Gilcreast-Hill, 2002-Ohio-4524, at ¶ 20.
 {¶ 49} Gilcreast-Hill argued that the "parking" exception to the policy exclusion extended liability coverage to the specified categories of autos, i.e., non-owned, non-rented, and non-loaned automobiles. We rejected this argument and held:
"The phrase `not owned by or rented or loaned to you or the insured' does not `specifically identify' autos pursuant to the definition of automobile or motor vehicle liability. The policy cannot serve as proof of financial responsibility for `owners or operators of the motorvehicles specifically identified in the policy,' if the policy does not specifically identify any motor vehicles. Accordingly, Ohio Farmers' CGL policy is not one which `serves as proof of financial responsibility * * * for owners or operators of the motor vehicles specifically identified in the policy of insurance' and cannot, therefore, be an automobile or motor vehicle liability policy pursuant to R.C. 3937.18." (Emphasis sic.)Gilcreast-Hill, 2002-Ohio-4524, at ¶ 28.
 {¶ 50} Because the policy was not an "automobile liability or motor vehicle liability" policy, this Court concluded that R.C. 3937.18 did not apply and Ohio Farmers was not required to offer UM/UIM coverage.Gilcreast-Hill 2002-Ohio-4524, at ¶ 29.
 {¶ 51} Like the policy at issue in Gilcreast-Hill, Erie's policy contains an endorsement that provides a limited form of liability coverage to a narrow class of automobiles. The "non-owned and hired automobile" endorsement contained in Erie's policy only refers to a narrow class of vehicles, however, the endorsement does not "specifically identify" any automobiles as required by R.C. 3937.18(L)(1). The "non-owned and hired automobile" endorsement effectively amended "Section II" of the policy. Section II provided, in pertinent part:
"Coverage G
"We will pay for damages because of bodily injury or property damage for which the law holds anyone we protect responsible and which are covered by your policy."
 {¶ 52} The phrase "anyone we protect" is defined as:
"1. you;
"* * *
"6. your employees while in the course of their employment. Employees are not Insureds for:
"a. bodily injury to you, to your members or to a co-employee while that co-employee is in the course of his or her employment or the spouse, child, parent, brother or sister of that co-employee as a consequence of such bodily injury, or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or
"b. bodily injury arising out of their rendering of, or failure to render professional heath care services; or
"c. property damage to property:
"1) owned, occupied or used by
"2) rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,
"you, any of your employees, partners, or members[.]" (Emphasis omitted.)
 {¶ 53} The "non-owned and hired automobile" endorsement amended the definition of "anyone we protect" to include:
"1. you;
"2. any other person using a hired automobile with your permission;
"3. with respect to a non-owned automobile, any partner, member of a limited liability company, or executive officer of yours, but only while such automobile is being used in your business.
"4. any other person or organization, but only with respect to liability because of acts or omissions of anyone we protect under 1., 2. or 3. above." (Emphasis omitted.)
 {¶ 54} The term "hired automobile" is defined as "any automobile you lease, hire, or borrow. This does not include any automobile you lease, hire, or borrow from any of your employees or members of their households, or from any partner or executive officer of yours." (Emphasis omitted.) The term "non-owned automobile" is defined as "any automobile you do not own, lease, hire, or borrow which is used in connection with your business." (Emphasis omitted.)
 {¶ 55} The "non-owned and hired automobile" endorsement clearly fails to "specifically identify" any automobiles as required by R.C.3937.18(L)(1). In fact, aside from the "non-owned and hired automobile" endorsement, the policy, as a whole, fails to indicate that automobiles, or damages arising from the use of automobiles, are covered under the terms of the policy. Therefore, based upon our holding inGilcreast-Hill, we find that Erie's policy is not an "automobile liability or motor vehicle liability policy of insurance" and, thus the policy is not subject to the requirements of R.C. 3937.18 and Appellants are not entitled to UIM coverage. See Gilcreast-Hill, 2002-Ohio-4524, at ¶ 29. Consequently, we find that there is no genuine issue of material fact and the trial court did not err in granting Erie's motion for summary judgment.
 National Union's insurance policy {¶ 56} In National Union's motion for summary judgment, it argued that the insurance policy it maintained with Coca-Cola was not a "motor vehicle liability policy of insurance" and that Coca-Cola is a self-insuring entity because Continental's policy is a "fronting policy". Continental alternatively asserted that, assuming its policy is subject to the requirements of R.C. 3937.18, Coca-Cola executed a valid written rejection of UM/UIM coverage under the policy and Appellant's do not qualify as "insureds." It further argued in its motion for summary judgment that the policy it carried with Coca-Cola was an umbrella policy and that "[a] perquisite for any liability under the [umbrella policy] is liability under the underlying policies issued by [Continental]. Since [Continental] also rejected UM/UIM coverage under [its policy], National Union is not liable."
 {¶ 57} Appellants, on the other hand, maintained in their response to National Union's motion for summary judgment that "coverage exists under [Continental's] policy in this case * * *, but whether coverage exists or does not exist under [Continental's] policy is simply not relevant to the analysis of coverage under the [National Union] policy because of [Ross v. Farmers Ins. Group (1998), 82 Ohio St.3d 281]. Ross
mandates that the 1997 version of R.C. 3937.18 apply." On appeal, Appellants have also argued that the trial court relied on the incorrect version of R.C. 3937.18 when it concluded that National Union was not liable for coverage because Continental, which held the underlying policy, was not liable. Appellants have maintained that "since the National Union policy was renewed on November 1, 1997, R.C. 3937.18 as it existed on that date is applicable."
 {¶ 58} Assuming, without deciding, that R.C. 3937.18[7] applies to National Union's policy and that the policy provides UM/UIM coverage, this Court finds that Appellants are still precluded from recovering under the policy because they were denied coverage under the underlying policy, viz., Continental's policy.
 {¶ 59} This Court finds that based on the provisions contained in National Union's policy, the policy provides excess insurance. SeeBrodbeck v. Cont'l Cas. Co. (Feb. 8, 2002), 6th Dist. No. L-01-1269, 2002 Ohio App. LEXIS 467, at *7. The relevant provision provides:
"Coverage
"We will pay on behalf of the Insured those sums in excess of the Retained Limit that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance."
 {¶ 60} The term "Retained Limit[,]" which is contained in Section III "Limits of Insurance[,]" is defined as:
"1. The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the insured; or
"2. The amount stated in the Declarations as Self Insured Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the Insured; and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations."[8]
 {¶ 61} If a party is precluded from recovering UM/UIM benefits under the underlying policy, the party is also necessarily precluded from recovering UM/UIM benefits under the excess policy. See Synder v.Westfield Co., 9th Dist. No. 02CA0064, 2003-Ohio-5904, at ¶ 18, citing Misseldine v. Am. Guar. Liab. Ins. Co., 8th Dist. No. 82029, 2003-Ohio-2315, at ¶ 9; Szekeres v. State Farm Fire Cas. Co., 5th Dist. No. 02CA00004, 2002-Ohio-5989, at ¶ 83.
 {¶ 62} In the case sub judice, the Continental policy is the primary policy or the underlying policy of insurance. National Union is the excess policy of insurance. In our discussion of Continental's insurance policy, we held that Appellants were not entitled to UIM benefits because they did not qualify as "insureds." Because Appellants were denied coverage under that policy, which was the underlying policy of insurance, we must necessarily find that they cannot recover under National Union's policy. See Synder, 2003-Ohio-5904, at ¶ 18. As such, we find that there is no genuine issue of material fact and the trial court did not err in granting National Union's motion for summary judgment.
 {¶ 63} In sum, we find that the trial court did not err in granting Continental's, Erie's, and National Union's motions for summary judgment. Furthermore, we note that although we affirmed the trial court's decision to grant Continental and Erie's motions for summary judgment on grounds different than those relied upon by the trial court, an appellate court can affirm the trial court's entry of summary judgment on any grounds that support that decision. See McKay v. Cutlip (May 13, 1992), 80 Ohio App.3d 487, 491. Appellants' assignment of error lacks merit.
 Continental's Cross-Assignment of Error
"The trial court committed reversible error by holding that Policy No. 2 47903629 issued by [continental] to Coca-Cola Enterprises, Inc. * * *, effective November 1, 2000 to November 1, 2001 * * * is subject to R.C.3937.18."
 {¶ 64} In Continental's cross-assignment of error, it has argued that the trial court erred in finding that Continental's policy is subject to the requirements of R.C. 3937.18. In light of our disposition of Appellants' sole assignment of error, we need not address Continental's cross-assignment of error. See App.R. 12(A)(1)(c).
 III {¶ 65} Appellants' assignment of error is overruled. We decline to address Continental's cross-assignment of error. The judgment of the trial court is affirmed.
Judgment affirmed.
Batchelder, J., concurs.
Carr, P.J., concurs in Judgment only.
[1] In Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, discussed infra, the Ohio Supreme Court narrowed the scope of Scott-Pontzer.
[2] National Union Fire Insurance Co. maintained an excess liability insurance policy with Coca Cola Enterprises, Inc.
[3] Continental, in its motion for summary judgment, explained that a "`fronting policy' program is a legal risk management device commonly used by large corporations, operating in multiple states, in which the corporation pays a discounted premium to an insurer, which maintains insurance licensing and filing capabilities in a particular state or states, to issue and maintain an `insurance policy' covering the corporation in order to comply with the insurance laws and regulations of each state in which the corporation is required to maintain proof of insurance. However, through the use of self-insurance mechanisms * * * the corporation retains all of the risk covered under the `fronting policy.' In effect, the corporation `rents' the insurer's licensing and filing capabilities in a particular state or states, and thereby becomes a self-insurer and is not subject to the requirements of R.C.3937.18."
[4] See footnote 1.
[5] The trial court, in its journal entry granting summary judgment for the defendant insurance companies, stated that "[Robert Tharp, Sr.] was not within the course and scope of employment" when he was involved in the instant motor vehicle accident. None of the parties have challenged the trial court's finding.
[6] "For the purposes of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Ross v. Farmers Ins. Groupof Cos. (1998), 82 Ohio St.3d 281, syllabus. The accident in this case occurred on March 9, 2001. The policy was in effect from June 19, 2000 to June 19, 2001. Therefore, this Court must apply the version of R.C. 3937.18
that was in effect on June 19, 2000; this Court will therefore apply the version of R.C. 3937.18 that was amended by H.B. 261, effective September 3, 1997, and S.B. 57, effective November 2, 1999. R.C. 3937.18 was subsequently amended by S.B. 267, effective September 21, 2000, and S.B. 97, effective October 31, 2001.
[7] Appellants have argued that the trial court applied the wrong version of R.C. 3937.18(L). The trial court, Appellants have argued, applied the version that was affected by H.B. 261, effective November 2, 1999. That version provided, in pertinent part:
"(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
"(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by [R.C. 4509.019K)] division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
"(2) Any umbrella liability policy of insurance written as excess over one or more policies described in [R.C. 3937.18(L)(1)]."
Appellants believe that the correct version of the statute that the trial court should have applied to National Union's policy was that version in effect on November 1, 1997; the policy period of National Union's insurance contract was from November 1, 1997 to November 1, 2002. Pursuant to Ross v. Farmers Ins. Group (1998), 82 Ohio St.3d 281, we find that Appellants are correct in their argument. However, we find that it is irrelevant which version of the statute applied to National Union's policy for several reasons. First, the trial court did not rely on R.C. 3937.18(L) when it made its decision regarding National Union's policy; in fact, the trial court never discussed R.C. 3937.18(L) in its analysis of National Union's policy. Second, it is irrelevant which version of R.C. 3937.18(L) applied to National Union's policy because under either version it appears that National Union would constitute an "automobile liability or motor vehicle liability policy of insurance" and would be required to offer UM/UIM coverage. Appellants, however, would still be precluded from UM/UIM coverage because National Union's policy was an excess policy, which is triggered only when the underlying policy has been paid in full to the insured. See Synder v. Westfield Co., 9th Dist. No. 02CA0064, 2003-Ohio-5904, at ¶ 18, citing Misseldine v.Am. Guar. Liab. Ins. Co., 8th Dist. No. 82029, 2003-Ohio-2315, at ¶ 9. Because the underlying policy (viz., Continental's policy) did not apply to Appellants' claim, National Union was never required, pursuant to the terms of its contract, to pay Appellants any monies for UM/UIM coverage.
[8] A careful review of National Union's policy reveals that Continental's policy was not listed as an underlying policy for which National Union would provide excess coverage. The "Schedule of Underlying Insurance" lists all underlying policies and Continental is not listed. However, this fact is not detrimental to our analysis because of the term "Retained Limit." That term is referred to in the policy's coverage clause and it indicates that National Union will pay for any damages in excess of the limits of the underlying policy and "the applicable limits of any other underlying insurance providing coverage to [Coca-Cola]." (Emphasis added; alterations added.) Thus, it appears that National Union's policy provides excess coverage to those policies listed in the "Schedule of Underlying Insurance" and any other primary policy that Coca-Cola is insured under. We also note that Appellants have not challenged the trial court's finding that Continental's policy is the underlying policy and that National Union's policy is the "excess policy" that provides excess coverage to Continental's policy.