OPINION
{¶ 1} This is an appeal of the decision to grant summary judgment to two insurance companies in a matter dealing with underinsured motorist coverage. Appellant's issues on appeal depend upon the validity of the holding of Scott-Pontzer v.Liberty Mut. Fire Ins. Co. (1999), 85 Ohio St.3d 660,710 N.E.2d 1116, which has recently been limited by the holding inWestfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849. The alleged "insureds" were not acting within the "course and scope of employment" at the time of the accident, as required by Galatis, and therefore, there is no coverage under any of the policies in dispute in this appeal. The judgment of the Columbiana County Court of Common Pleas is affirmed.
 FACTS AND PROCEDURAL MATTERS {¶ 2} On the afternoon of January 31, 2000, Marissa Medure was driving a car on Route 172 in Hanoverton Township, Columbiana County, Ohio. Marissa's mother, Gina Medure ("Mrs. Medure"), owned the car and was riding in the passenger seat at the time. The roads were snowy and icy. Marissa lost control of the car and struck an oncoming car. The impact killed Mrs. Medure, a 47-year old mother of six children.
 {¶ 3} Appellant Jeffrey Medure, one of Mrs. Medure's children, was appointed as administrator of her estate. On August 17, 2001, Appellant filed a complaint against Marissa and a number of unnamed insurance companies for negligence, wrongful death, and underinsured motorists' ("UIM") benefits. The complaint alleged that Marissa had negligently caused the death of Mrs. Medure.
 {¶ 4} Appellant amended the complaint on September 15, 2001, identifying Valley Forge Insurance Company ("Valley Forge") as one of the defendants. The amended complaint alleged that Mrs. Medure was employed by Threshold Residential Services, Inc. ("Threshold") at the time of the accident and that Threshold maintained a primary automobile liability policy containing a $1 million UIM endorsement (the "Valley Forge Primary Policy"). The amended complaint averred that Mrs. Medure was protected by the Valley Forge Primary Policy as an employee of Threshold, under the principles set forth in Scott-Pontzer v. Liberty Mut. FireIns. Co. (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. The complaint also alleged that Valley Forge issued an umbrella automobile policy ("Valley Forge Umbrella Policy") to Threshold, but that it did not offer UIM coverage in that policy. Appellant alleged that by operation of law Mrs. Medure was covered by the Valley Forge Umbrella Policy to the extent of $1 million.
 {¶ 5} On May 6, 2002, Appellant filed a second amended complaint, adding Celina Mutual Insurance Company ("Celina") as a defendant. The complaint alleged that Appellant Jeffrey Medure was employed by Albco Foundry Machine Co. ("Albco"), and that Albco held an automobile liability policy issued by Celina. The Celina Policy contained UIM coverage. Appellant contended that Mrs. Medure was protected by the policy as a relative of an employee of Albco. Appellant also alleged that Mrs. Medure was covered under an umbrella policy issued by Celina ("Celina Excess Policy").
 {¶ 6} Appellant filed motions for summary judgment against both Valley Forge and Celina, and both insurance companies filed cross-motions for summary judgment on the same coverage issues.
 {¶ 7} On October 17, 2002, the trial court entered summary judgment in favor of Valley Forge and Celina. The trial court held that the facts of this case did not fall under the requirements of Scott-Pontzer. One of the reasonsScott-Pontzer did not apply was that Mrs. Medure was not occupying a "covered auto" when the accident occurred. The trial court upheld an "other owned auto" exclusion in the Valley Forge Primary Policy, which barred coverage unless the insured was in a "covered auto" at the time of the accident. The court found that Mrs. Medure was not acting within the scope of her employment, which was a condition of coverage under the Valley Forge Umbrella Policy. The trial court denied Appellant's motions for summary judgment and sustained Valley Forge's and Celina's cross-motions for summary judgment. The judgment entry stated that "there is no just cause for delay" as required by Civ.R. 54(B). The negligence claim against Marissa remained pending on October 17, 2002.
 {¶ 8} This timely appeal was filed on October 22, 2002. Appellant has raised six assignments of error, which will be treated slightly out of order for simplification of analysis.
 STANDARD OF REVIEW FOR SUMMARY JUDGMENT {¶ 9} This appeal involves the trial court's determination of a number of motions for summary judgment. Appellate review of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. In accordance with Civ.R. 56, summary judgment is appropriate:
 {¶ 10} "[W]hen (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995),73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274."Zivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201.
 ISSUES INVOLVING THE VALLEY FORGE PRIMARY POLICY ASSIGNMENT OF ERROR NO. 1 {¶ 11} Appellant's first assignment of error asserts:
 {¶ 12} "The trial court erred in holding that the rule inWolfe v. Wolfe (2000), 88 Ohio St.3d 246, did not apply to commericial auto policies, and in not therefore holding that the primary uim endorsement in the 1998-1999 Cna/Valley Forge Primary Policy, which did not contain any `other owned auto' exclusion, provided uim coverage to decedent's estate."
 {¶ 13} Appellant would like this Court to limit its review to a 1998 version of the Valley Forge Primary Policy and a 1995 version of the UIM statute, R.C. § 3937.18. If the 1998 policy and corresponding law define the parameters of this appeal, Valley Forge cannot rely on subsequent changes to the policy or on a 1997 revision of R.C. § 3937.18 which allowed UIM policies to exclude coverage for "other owned autos."
 {¶ 14} Valley Forge believes that a 1999 version of the policy applies to this case. The 1999 version of the Valley Forge Primary Policy contained an "other owned auto" provision that attempted to incorporate the exclusionary language allowed by the 1997 version of R.C. § 3937.18(J)(1). If the 1999 version of the policy does not apply, then Valley Forge cannot rely on the "other owned auto" exclusion to deny coverage.
 {¶ 15} Appellant relies on Wolfe v. Wolfe (2000),88 Ohio St.3d 246, 725 N.E.2d 261, which held that an automobile liability policy must have a minimum guaranteed policy period of two years, "during which the policy cannot be altered except by agreement of the parties[.]" Wolfe at paragraph one of the syllabus. Wolfe also held that the guaranteed two-year period applies to policy renewals as well as to the original contract. Id. at paragraph three of the syllabus. Thus, according toWolfe, the terms of an automobile liability policy are locked in place for two years when the policy is signed, and for two years after each renewal is signed.
 {¶ 16} The Ohio Supreme Court has also held that, "[f]or the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Rossv. Farmers Ins. Group of Cos. (1998), 82 Ohio St.3d 281,695 N.E.2d 732, syllabus.
 {¶ 17} The record contains policies issued by Valley Forge from May 1, 1998, through May 1, 1999, and a subsequent policy effective May 1, 1999, through May 1, 2000. Appellant's accident occurred on January 31, 2000. If Wolfe applies to these policies, then the policy in effect at the time of accident would have been the 1998 policy, and the applicable statute would be a pre-1997 version of R.C. § 3937.18.
 {¶ 18} It does not appear to matter which version of the policy was in effect at the time of the accident, because Mrs. Medure was not acting in the course and scope of employment at the time of accident, and does not qualify as an insured underGalatis, which held:
 {¶ 19} "2. Absent specific language to the contrary, a policy of insurance that names a corporation as an insured for uninsured or underinsured motorist coverage covers a loss sustained by an employee of the corporation only if the loss occurs within the course and scope of employment." Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, at paragraph two of the syllabus.
 {¶ 20} Valley Forge does not need to rely on an "other owned auto" exclusion in the 1999 version of the policy, because there is no underlying coverage and, thus, there is no need to apply an exclusion. Therefore, Appellant's first assignment of error is overruled as moot based on our analysis of the remaining assignments of error.
 ASSIGNMENT OF ERROR NO. 2 {¶ 21} Appellant's second assignment of error states:
 {¶ 22} "THE TRIAL COURT ERRED IN HOLDING THAT THE `OTHER OWNED AUTO' EXCLUSION APPLIES TO VEHICLES OWNED BY AN `INSURED,' AND IS NOT RESTRICTED ONLY TO VEHICLES OWNED BY THE `NAMED INSURED,' (THE CORPORATE EMPLOYER NAMED ON THE DECLARATIONS PAGE) AND THAT THE EXCLUSION BARRED UIM COVERAGE FOR THE DECEDENT EMPLOYEE, GINA MEDURE."
 {¶ 23} Appellant assumes that Mrs. Medure is an "insured" under the Valley Forge Primary Policy, based on the holding ofScott-Pontzer, because she was an employee of Threshold. The UIM section of the Valley Forge Primary Policy contained an "other owned auto" exclusion. This type of exclusion was permitted by the 1997 version of R.C. § 3937.18(J)(1), amended by Am.Sub.H.B. 261. Appellant's premise that Mrs. Medure was an insured person under the Valley Forge Primary Policy is erroneous in light of the Ohio Supreme Court's recent Galatis opinion. See Galatis, supra, 100 Ohio St.3d 216, 2003-Ohio-5849, paragraph two of the syllabus. It is undisputed that Mrs. Medure was not within the scope and course of employment when the accident occurred.
 {¶ 24} Mrs. Medure is not an insured under the Valley Forge Primary Policy, and therefore there is no need to answer whether or not the "other owned auto" exclusion also applies. Assignment of error number two essentially asks us to render an advisory opinion, which we decline.
 ISSUES INVOLVING THE VALLEY FORGE UMBRELLA POLICY ASSIGNMENT OF ERROR NO. 3 {¶ 25} "The trial court erred in holding that gina medure was not an `insured' under Cna/Valley Forge's Commericial Auto Liability Umbrella Plus Policy, or in the alternative that the Umbrella Policy's scope of employment restriction on the definition of `insured' precluded Umbrella Uim from arising by operation of law when Cna/Valley Forge failed to offer umbrella uim coverage to decedent's employer in the same amount as the umbrella auto liability coverage it provided to gina's employer."
 {¶ 26} This assignment of error contains two subissues. We will deal with the second subissue first:
 {¶ 27} "Does a scope of employment restriction contained in a commercial auto umbrella liability policy's definition of insured apply to UIM coverage which arises by operation of law, so as to prevent UIM coverage from arising by operation of law?"
 {¶ 28} Appellant's argument here is the same as the reasoning used in Scott-Pontzer for imposing UIM coverage as a matter of law in an umbrella policy. In Scott-Pontzer, the umbrella policy granted extended automobile liability coverage to a corporation. The umbrella policy failed to offer UIM to the corporation. Employees of the corporation were deemed to be included as "insureds" because of an ambiguity in the policy. Therefore, Scott-Pontzer held that UIM coverage should be imposed as a matter of law. Scott-Pontzer at 665.
 {¶ 29} The recent Galatis opinion by the Ohio Supreme Court did not overrule or expressly limit the sections of theScott-Pontzer opinion that dealt with the failure of an umbrella policy to offer UM coverage. Under the pre-Galatis
analysis of this issue, the following principles would have applied:
 {¶ 30} 1. The requirements of R.C. § 3937.18 encompass excess and umbrella policies as well as primary auto liability policies.Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565, 568, 669 N.E.2d 824.
 {¶ 31} 2. "It is well settled that insurance companies must offer UM coverage with every automobile liability or motor vehicle liability policy delivered or issued in this state. R.C.3937.18(A). Failure to do so results in the insured acquiring UM coverage by operation of law." Id. at 567.
 {¶ 32} 3. While an insured may reject coverage pursuant to R.C. § 3937.18(C), rejection is invalid absent a written offer of UM/UIM coverage. Id.
 {¶ 33} 4. CNA did not offer UIM protection when it issued the Valley Forge Umbrella Policy.
 {¶ 34} 5. UIM coverage is meant to protect "persons" rather than automobiles. Martin v. Midwestern Group Ins. Co. (1994),70 Ohio St.3d 478, 480, 639 N.E.2d 438.
 {¶ 35} The critical last step in the above analysis is the step that the Scott-Pontzer opinion took in defining the employees of a corporation, rather than the corporation itself, as the persons intended by R.C. § 3937.18 to protect.Scott-Pontzer, supra, 85 Ohio St.3d at 664, 710 N.E.2d 1116.
 {¶ 36} It appears that this final step of the analysis has been significantly modified by Galatis, and precludes Mrs. Medure from receiving UIM coverage as a matter of law. First, we must look to the language of former R.C. § 3937.18(A) to determine what an insurer was actually required to offer an insured with respect to UIM coverage:
 {¶ 37} "(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy due to bodily injury or death suffered by such insureds:
 {¶ 38} "(1) Uninsured motorist coverage, * * *
 {¶ 39} "(2) Underinsured motorist coverage, * * *."
 {¶ 40} The statute only required that UIM coverage be offered to, "persons insured under the policy." (Emphasis added.) According to Galatis, "[w]hether someone is insured under an insurance policy should not be interpreted in favor of one who was not a party to the contract. * * * [T]he plaintiff who is not a party to the insurance contract is not in a position to urge a construction of the contract that would be detrimental to both parties to the contract[.]" Id. at ¶ 49. Galatis also reasoned that, "[a]bsent contractual language to the contrary, it is doubtful that either an insurer or a corporate policyholder ever conceived of contracting for coverage for off-duty employees occupying noncovered autos * * *." Id. at ¶ 39.
 {¶ 41} Section II of the Commercial Umbrella Plus policy makes it clear that the policyholder, i.e., Threshold, only intended that employees be insured when they were acting in the scope of employment. Section II (2)(a) of the policy states:
 {¶ 42} "2. Each of the following is also an insured:
 {¶ 43} "a. Your employees, other than your executive officers and directors, but only for acts within the scope of their employment by you. * * *"
 {¶ 44} Under the principles set forth in Galatis, Mrs. Medure should not be considered an insured under the Valley Forge Umbrella Policy.
 {¶ 45} Although Galatis did not specifically overrule the aspect of Scott-Pontzer that applies to this assignment of error, it is no longer tenable to apply any aspect ofScott-Pontzer unless the employee making the UIM claim was acting in the course and scope of employment at the time of the accident. Only an employee acting within the course and scope of employment would have standing to assert that the insurance company had failed to properly offer UIM coverage. The Ohio Supreme Court implicitly approved of our approach to this issue by summarily reversing on the basis of Galatis at least one appellate decision that had awarded UM/UIM coverage on the same theory used by the Appellant. See Morris v. Emerson,
2003-Ohio-2708, 5th Dist. No. 2002CA00414, reversed by In reUninsured and Underinsured Motorist Coverage Cases,100 Ohio St.3d 302, 2003-Ohio-5888, 798 N.E.2d 1077.
 {¶ 46} Returning now to the first subissue under this assignment of error, Appellant asks the following question:
 {¶ 47} "Is an employee an `insured' under a commercial umbrella auto liability policy, where the umbrella policy expressly provides that anyone who is an `insured' under the primary auto liability policy identified in the Schedule of Underlying Insurance, is also an `insured' under the umbrella policy, when the primary auto liability policy identified in the Schedule provides `hired and non-owned' auto coverage for employees?"
 {¶ 48} Appellant is attempting to establish an alternative basis for treating Mrs. Medure as an "insured" under the liability sections of the Valley Forge Primary Policy. The purpose of Appellant's analysis is to prove that when CNA issued the Valley Forge Umbrella Policy, it was issuing an automobile liability policy through a variety of provisions within the primary policy and was therefore required to offer UIM coverage and failed.
 {¶ 49} It remains true that the requirements of R.C. §3937.18 apply to excess and umbrella policies as well as primary auto liability policies. Gyori v. Johnston Coca-Cola BottlingGroup, Inc. (1996), 76 Ohio St.3d 565, 568, 669 N.E.2d 824. "It is well settled that insurance companies must offer UM coverage with every automobile liability or motor vehicle liability policy delivered or issued in this state. R.C. 3937.18(A). Failure to do so results in the insured acquiring UM coverage by operation of law." Id. at 567.
 {¶ 50} Appellant first argues that Mrs. Medure was covered under the primary policy through coverage Symbol 9, which deals with non-owned and hired vehicles. Valley Forge correctly points out that this symbol is never referred to in the policy declarations, and thus, is inapplicable to this case.
 {¶ 51} Appellant also argues that the Valley Forge Primary Policy provides liability protection for "any auto" as covered by coverage symbol 1. Appellant argues that coverage symbol 1 also includes "non-owned auto" coverage because Threshold Residential Services, Inc. (the named insured and Mrs. Medure's employer) is a private, nonprofit social service agency. Appellant argues that social service agencies often rely on their employees to use their own vehicles to perform job functions. It is not clear how these assertions result in UIM coverage for Mrs. Medure, particularly when Appellant admits that Mrs. Medure was not acting in the course and scope of employment when the accident happened. Valley Forge was somewhat at a loss in responding to this argument. Certainly, the "evidence" Appellant cites in support is not part of Appellant's motions for summary judgment, and is clearly not part of the insurance contracts. This argument engages in mere speculation and is not persuasive.
 {¶ 52} Based on the analysis above, assignment of error number three is overruled.
 ISSUES INVOLVING THE CELINA PRIMARY POLICY ASSIGNMENT OF ERROR NO. 4 {¶ 53} "The trial court erred in granting the summary judgment motion of appellee celina insurance and in not holding that appellant's decedent was an insured `Family Member' under the primary uim endorsement of the celina commercial auto policy issued to decedent's son's corporate employer, albco."
 {¶ 54} Mrs. Medure's son, Jeffrey Medure, was employed by Albco, and the company maintained an automobile policy issued by Celina Mutual Insurance Company. The primary policy ("Celina Primary Policy") contained $1 million in coverage for automobile liability and $1 million in UIM coverage. The UIM endorsement defined an insured as "you" and, "if you are an individual, any `family member'." (Appellant's Brief, Appendix, Item 11, p. 1.) Appellant argues that Mrs. Medure was covered for UIM coverage under the Celina Primary Policy because she was a "family member" of Jeffrey Medure, who was an employee of Albco.
 {¶ 55} Based on the recent holding of Galatis, Mrs. Medure cannot be deemed an insured under the Celina Primary Policy:
 {¶ 56} "3. Where a policy of insurance designates a corporation as a named insured, the designation of `family members' of the named insured as other insureds does not extend insurance coverage to a family member of an employee of the corporation, unless that employee is also a named insured. (Ezawa v. Yasuda Fire Marine Ins. Co. of Am. [1999],86 Ohio St.3d 557, 715 N.E.2d 1142, overruled.)" Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at paragraph three of the syllabus.
 {¶ 57} Jeffrey Medure was not a named insured on the Celina Primary Policy, and therefore, coverage is not extended to Mrs. Medure as a family member. Assignment of error number four is overruled.
 ASSIGNMENT OF ERROR NO. 6 {¶ 58} "The trial court erred in granting the summary judgment motion of appellee celina insurance eventhough [sic] celina provided `hired and non-owned' auto liability coverage through a supplemental iso metalcrafter's endorsement (#Form Me 00 04 09 98), contained in albco's commericial [sic] general liability policy, in combination with celina's failure to offer ohio uim in the amount of the higher auto liability limits of the of the [sic] `hired and non-owned' supplemental auto liability coverage."
 {¶ 59} Appellant argues that he should have access to $2 million in coverage, imposed as a matter of law, because Celina failed to offer $2 million in UIM coverage under a Metalcrafters endorsement. The reason why Appellant believes the Metalcrafters endorsement is an automobile liability policy (requiring an offer of UIM coverage) is that the endorsement covered "hired" autos and "non-owned" autos used by Albco. Appellant relies onSelander v. Erie Ins. Group (1999), 85 Ohio St.3d 541,709 N.E.2d 1161, to support his view that a commercial general liability policy is subject to the requirements of R.C. § 3937.18
when the policy includes liability coverage for accidents involving hired or non-owned automobiles.
 {¶ 60} Celina argues that Mrs. Medure is not covered under the Metalcrafters endorsement because the accident did not arise out of Albco's business, as required by the endorsement:
 {¶ 61} "A. Hired Automobile Liability. Under COVERAGE A.
of the Commercial General Liability Coverage Form CG 00 01 coverage is extended to `bodily injury' or `property damage'arising out of the maintenance or use of `automobiles' hired by, rented to or loaned to you or your `employees' in the courseof your business. This Extension of Coverage shall be excess insurance * * *."
 {¶ 62} "B. Non-Owned Auto Liability. Under COVERAGE A. of the Commercial General Liability Coverage Form CG 00 01 coverage is extended to `bodily injury' or `property damage' arising out of the use of any non-owned `auto' in your business by any person other than you. This Extension of Coverage shall be excess insurance * * *." (Emphasis added.)
 {¶ 63} Celina contends that a prerequisite for coverage under these sections is that the accident occur in the course of or connected to Albco's business, and it is undisputed that the accident had nothing to do with Albco's business.
 {¶ 64} Celina next argues that the Selander holding is no longer applicable due to the 1997 changes in R.C. § 3937.18(L), which states:
 {¶ 65} "(L) As used in this section, `automobile liability or motor vehicle liability policy of insurance' means either of the following:
 {¶ 66} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of section 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance;
 {¶ 67} "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 68} "Proof of financial responsibility" is defined in R.C. § 4509.01(K) as "proof of ability to respond to damages [in specified amounts] for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle[.]"
 {¶ 69} The Ohio Supreme Court has recognized that the 1997 changes to R.C. § 3937.18 modify the Selander holding. SeeHillyer v. State Farm Fire Cas. Co., 97 Ohio St.3d 411,2002-Ohio-6662, 780 N.E.2d 262, fn. 2. This Court has agreed that "Am.Sub.H.B. No. 261 superseded Selander and its progeny."Blake v. First Financial Ins. Co., 7th Dist. No. 2002-CO-20, 2003-Ohio-1433.
 {¶ 70} Celina is correct that, under the 1997 version of R.C. § 3937.18, an extension of coverage for hired and non-owned autos does not convert a general liability policy into an automobile liability policy, and thus, does not require the insurance company to follow the offer/rejection requirements of R.C. §3937.18. See, e.g., Dancy v. Citizens Ins. Co., 5th Dist. No. 2002 AP 11 0086, 2003-Ohio-2858; Smith v. Cincinnati Ins. Co.,
11th Dist. No. 2001-L-114, 2002-Ohio-7343.
 {¶ 71} Furthermore, as stated earlier, Appellant does not have standing to assert Celina's alleged failure to offer UIM coverage because Mrs. Medure was not acting in the course and scope of employment and was not a family member of a named insured, as now required by Galatis.
 {¶ 72} For these reasons, Appellant's sixth assignment of error is overruled.
 ISSUES INVOLVING THE CELINA EXCESS POLICY ASSIGNMENT OF ERROR NO. 5 {¶ 73} "The trial court erred in granting the summary judgment motion of appellee celina insurance and in holding that celina's excess or Umbrella Um/Uim Endorsement (Form # "9891 (11 90)"), contained in the umbrella policy insuring jeffrey medure's employer, and that did not contain any `other owned auto' exclusion, precluded uim umbrella coverage for gina medure's accident and death."
 {¶ 74} Appellant argues that, unlike the Celina Primary Policy, the stand-alone excess policy does not contain an "other owned vehicle" exclusion. Appellant argues that the Celina Excess Policy's UM endorsement provided for very broad protection:
 {¶ 75} "We will pay all sums an Insured is legally entitled to recover as damages, in excess of the minimum underlyinglimit stated below, for Bodily Injury or Property Damage
from the owner or driver of an uninsured or underinsured
automobile. The damages must result from Bodily Injury orProperty Damage sustained by an insured and caused by anoccurrence. * * *" (Appellant's Brief, Appendix, Item 13.)
 {¶ 76} Appellant contends that even if Mrs. Medure was excluded from coverage under the primary policy because of the "other owned auto" exclusion, she should not be excluded from the excess policy.
 {¶ 77} For the reasons expressed in our analysis of assignment of error number four, and in light of Galatis, Mrs. Medure is not covered as a "family member" under the Celina Primary Policy, and therefore, is not covered under the excess policy. See Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at paragraph three of the syllabus. Assignment of error number five is overruled.
 CONCLUSIONS {¶ 78} The Galatis opinion precludes Appellant from asserting Scott-Pontzer coverage under the Valley Forge policies because the accident did not occur while Mrs. Medure was in the course and scope of employment. Furthermore, Mrs. Medure is not covered under the Celina policies because her claim is based on her relationship as a family member to an employee (her son, Jeffrey), but the employee is not listed as a named insured on the policies. All six assignments of error are hereby overruled and the trial court judgment is affirmed in full.
Donofrio, J., concurs.
Vukovich, J., concurs.