HOLLON, APPELLEE, *v.* CLARY ET AL.; TWIN CITY
FIRE INSURANCE COMPANY, APPELLANT.

[Cite as *Hollon v. Clary,* 104 Ohio St.3d 526, 2004-Ohio-6772.]

(No. 2003–2079—Submitted October 12, 2004—Decided December 17, 2004.)

O'CONNOR, J.

{¶ 1} Appellee, William Hollon, claims an entitlement to uninsured/underinsured motorist ("UM/UIM") insurance coverage under a policy of insurance with appellant, Twin City Fire Insurance Company ("Twin City"), his employer's liability insurer. Twin City denied Hollon's claim, alleging that American Ambulette and Ambulance Service, Inc. ("American"), Hollon's employer, had expressly rejected UM/UIM coverage. Hollon, however, asserts that American's rejection was ineffective because Twin City's written offer of UM/UIM coverage did not set forth the premiums for the coverage, as required by former R.C. 3937.18, Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372 ("H.B. 261") and *Kemper v. Michigan Millers Mut. Ins. Co.*, 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196. Accordingly, Hollon asserts that coverage arose by operation of law, pursuant to *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 669 N.E.2d 824.

{¶ 2} Twin City acknowledges that its written offer did not set forth the premiums for UM/UIM coverage. Nonetheless, it maintains that American's rejection was valid because Twin City's written offer, in conjunction with extrinsic evidence, satisfied H.B. 261 and *Kemper*. This cause of action is before us pursuant to our acceptance of Twin City's discretionary appeal.

{¶ 3} Twin City offered UM/UIM coverage to American via two forms. Each form described the coverage and expressly stated the coverage limits; however, neither stated the applicable premiums. Kenneth Miller, American's co-owner, chose to reject UM/UIM coverage, signed the forms, and returned them to Twin City.

{¶ 4} During the relevant policy period of December 18, 1998, through December 18, 1999, Hollon was injured in two automobile accidents while he was employed as an ambulance driver for American. The first accident occurred on May 7, 1999, and involved a car driven by Tina Clary; the second accident occurred on October 15, 1999, and involved a car driven by David Robinson. Seeking compensation for his injuries, Hollon brought suit against Twin City, Clary, Robinson, and Guide One Insurance Company ("Guide One"), Hollon's personal UM/UIM insurance carrier.

{¶ 5} The claims against Robinson were dismissed after his insurer settled with Hollon. Guide One moved for partial summary judgment, and Twin City moved for summary judgment, attaching an affidavit by Miller, in which he averred the following:

{¶ 6} "Before approving and signing these rejection forms, I was informed, aware, and understood: (a) that UM/UIM coverage was available; (b) the amount of the premium that would be charged for UM/UIM coverage if I selected UM/UIM coverage, or of the reduced premium if I selected reduced UM/UIM

limits; (c) what UM/UIM coverage was; and (d) that I was rejecting UM/UIM coverage in its entirety."

{¶ 7} The trial court denied Guide One's motion and granted Twin City's motion. The court found that American had "expressly and knowingly" rejected UM/UIM coverage and, therefore, Twin City had no obligation to indemnify Hollon. Subsequently, Hollon dismissed the claims against Guide One, presumably after it had paid Hollon his policy limit.

{¶ 8} Hollon appealed from the court's judgment granting summary judgment to Twin City. The Court of Appeals for Montgomery County determined that a rejection of UM/UIM is not valid if the insurer's written offer does not state the premium to be charged, even when there is extrinsic evidence showing that the insured was aware of the premium. Accordingly, it held that American's rejection failed, and Hollon was entitled to UM/UIM coverage as a matter of law.

{¶ 9} In *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 739 N.E.2d 338, we held that in order to have a valid rejection of an offer of coverage under the Am.Sub.S.B. No. 20 version of R.C. 3937.18, 145 Ohio Laws, Part I, 204, 210 ("S.B. 20"), the offer must set forth in writing "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits." Id. at 449, 739 N.E.2d 338. After our ruling in *Linko*, R.C. 3937.18 was amended by H.B. 261, which governs the offer and rejection of insurance at issue here. Although "R.C. 3937.18, as amended by H.B. 261, unlike the [S.B. 20 version], speaks directly to the requirements that are necessary for a valid offer and rejection of UM/UIM coverage," *Kemper,* 98 Ohio St.3d 162, 2002-Ohio-7101, 781 N.E.2d 196, at ¶ 6 (Moyer, C.J., dissenting), *Kemper* held that *Linko*'s requirements are also applicable to the H.B. 261 version. *Kemper* at ¶ 2. Thus, under *Kemper,* a rejection of an offer that fails to satisfy the *Linko* requirements is invalid, and UM/UIM coverage arises by operation of law. See *Gyori,* 76 Ohio St.3d 565, 669 N.E.2d 824.

{¶ 10} In *Kemper,* we answered, without explanation, two questions certified to us by the United States District Court for the Northern District of Ohio, Western Division. Our response to the first question indicates that *Linko*'s requirements are applicable to insurance policies written while the H.B. 261 version of R.C. 3937.18 was in effect. The second question asked: "If the *Linko* requirements are applicable, does, under HB 261, a signed rejection act as an effective declination of UM/UIM coverage, where there is no other evidence, oral or documentary, of an offer of coverage?" See *Kemper* at ¶ 3. We answered in the negative. From our answer to the second question, Twin City has inferred that compliance with R.C. 3937.18 may be demonstrated by "other evidence," such as Miller's affidavit.

{¶ 11} Preliminarily, we note that this is an issue of contract formation, not of contract interpretation. The terms of the insurance contract between Twin City and American are clear and do not include UM/UIM coverage. We must determine only whether the record demonstrates that a valid offer of UM/UIM insurance was made.

{¶ 12} The H.B. 261 version of R.C. 3937.18(C) differs from the H.B. 20 version interpreted in *Linko* by providing that a signed rejection of coverage creates the presumption that a valid offer of coverage has been made. It read: "A named insured's or applicant's written, signed rejection of both coverages as offered under division (A) of this section, or a named insured's or applicant's written, signed selection of such coverages in accordance with the schedule of limits approved by the superintendent, shall be effective on the day signed, shall create a presumption of an offer of coverages consistent with division (A) of this section, and shall be binding on all other named insureds, insureds, or applicants." Because the General Assembly amended the statute to create the presumption of a valid offer when an insured signs a rejection of coverage, *Linko*'s requirements are arguably less relevant to the H.B. 261 version of R.C. 3937.18 than they are to the S.B. 20 version, the statute that *Linko* addressed. Nonetheless, in *Kemper* we held that *Linko* applies to H.B. 261. But we left unanswered how it applies.

{¶ 13} The *Linko* requirements are a means to an end. They were chosen to ensure that insurers make meaningful offers. A "meaningful offer" is "an offer that is an offer in substance and not just in name" that "allow[s] an insured to make an express, knowing rejection of [UM/UIM] coverage." *Linko*, 90 Ohio St.3d at 449, 739 N.E.2d 338. Though Twin City's written offer, per se, did not satisfy all the *Linko* requirements, we will not elevate form over substance or ignore the expressed intent of the parties to a contract. Unequivocally, American expressed that it did not wish to purchase UM/UIM coverage. Twin City's written offer of UM/UIM coverage, in conjunction with Miller's unrebutted affidavit, demonstrates that American's rejection was made after having received a brief description of coverage, an express statement of UM/UIM coverage limits, and the applicable premiums. We are, therefore, certain that American made an express, knowing rejection of UM/UIM coverage, and under H.B. 261, we can presume that a valid offer had been made.

{¶ 14} Accordingly, we hold that a signed, written rejection of UM/UIM coverage is valid under the H.B. 261 version of R.C. 3937.18 if it was made in response to an offer that included a brief description of the coverage and the coverage premiums and limits. Once a signed rejection is produced, the elements of the offer may be demonstrated by extrinsic evidence.

Judgment reversed.

MOYER, C.J., LUNDBERG STRATTON and O'DONNELL, JJ., concur.

RESNICK, J., dissents.

F.E. SWEENEY and PFEIFER, JJ., would dismiss the appeal as having been improvidently allowed.