OPINION
{¶ 1} This is an accelerated calendar case. The central issue is whether appellant, David Rexroad ("Rexroad"), was entitled to uninsured or underinsured motorists ("UM/UIM") coverage for his injuries under a business auto insurance policy. At the time of the collision that caused his injuries, he was not acting within the scope of his employment. For the reasons discussed below, we affirm the trial court's judgment entry holding that he was not entitled to UM/UIM coverage for his injuries.
 {¶ 2} Rexroad was a passenger in an automobile owned by Rebecca Wachtel, when, on February 12, 2001, Wachtel negligently collided with another automobile. As a result of the collision, Rexroad sustained serious personal injuries.
 {¶ 3} Rexroad recovered the limits of Wachtel's policy of insurance, amounting to $100,000.
 {¶ 4} At the time of the collision, Rexroad was a laid-off employee of Roth Brothers, Inc., a corporation controlled by FirstEnergy Facilities Services Group, Inc. ("FirstEnergy"). His job title was sheetmetal foreman. Rexroad admitted that he was not acting within the scope of his employment at the time of the collision, though he does maintain that he was still an employee, even in his laid-off status.
 {¶ 5} Rexroad had been provided a company truck that he used to travel to and from work, and to jobs that were out of town. This vehicle was not involved in the February 12, 2001 collision. Company documents listed him as an authorized driver for the truck. He was in possession of that truck on the date of the collision. Roth Brothers also provided an Ohio Insurance Identification Card to him.
 {¶ 6} In his affidavit, Rexroad stated:
 {¶ 7} "[7.] The truck was used to travel to and from work and while on the job for Roth Brothers.
 {¶ 8} "* * *
 {¶ 9} "[9.] I was permitted to use the truck for personal use. Many of the jobs I worked were out of town and required overnight stays. As the Roth Brothers truck was my only means of transportation, I was permitted to use the truck after work. I was also permitted to use the truck for personal use such as stopping at the store for groceries or other personal items on the way to or from work."
 {¶ 10} In essence, Rexroad is saying in his affidavit that personal use of the company truck was permitted, but only as an adjunct to overnight stays for out-of-town jobs, or going to and from work.
 {¶ 11} The affidavit of Howard Merritt, CFO of Roth Brothers, explained, in his affidavit in support of the motion for summary judgment, that Roth Brothers provided company trucks for personal use "strictly voluntarily, for the convenience of both Roth Brothers and its employees."
 {¶ 12} However, Thomas J. McDonnell, a staff business analyst of FirstEnergy, in his affidavit in support of the motion for summary judgment, stated that "[i]t was not FirstEnergy's intent to provide automobile liability coverage (or UM/UIM coverage) to off-duty employees," and that "FirstEnergy has never agreed to act as an insurer for its employees (or for the employees of any affiliate) who experience a UM/UIM loss."
 {¶ 13} After the collision, Rexroad returned to work for Roth Brothers, but only to attend seminars and training. He was unable to perform his duties as a sheetmetal worker and asserts that he is permanently disabled.
 {¶ 14} Following the accident, Rexroad sought to collect under the uninsured motorist coverage of the insurance policy denominated on his Ohio Insurance Identification Card. The policy of insurance in question was issued by Old Republic Insurance Company ("Old Republic") to FirstEnergy, and was identified as policy no. MWTB 17825. The policy period was June 30, 1999 through June 30, 2002. An endorsement to that policy, specifically, "The Broad Form Named Insured Endorsement," provided that any entity owned fifty percent or more by FirstEnergy, was an insured under policy no. MWTB 17825. Roth Brothers was owned more than fifty percent by FirstEnergy and was an insured under the policy. That same endorsement provides that "[t]hroughout this policy the words `you' and `your' refer to the Named Insured shown in the Declaration and any business entity" owned to the extent of fifty percent or more.
 {¶ 15} The policy further provided that employees of Roth Brothers were insureds under the liability portions of the policy. A policy endorsement entitled "Employees as Insureds" provided that "[a]ny `employee' of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs." The phrase "any auto" was used to designate which vehicles were "covered autos" under the liability portion of the policy.
 {¶ 16} There was no UM/UIM coverage for the FirstEnergy policy, because such coverage had been rejected. The rejection form does not contain the amount of premium that would have to be paid if such coverage were accepted.
 {¶ 17} Cross motions for summary judgment were filed by Old Republic and by Rexroad. The matter was submitted to the trial court on briefs. The motion for summary judgment of Old Republic was granted, thereby denying coverage to Rexroad; and the motion for summary judgment of Rexroad was denied. The trial court based its decision on the ground that it "cannot ignore the ruling inGalatis," that UM/UIM coverage under a corporation's auto policy only applies to employees "acting within the course and scope of their employment, unless otherwise specifically agreed."[1]
 {¶ 18} Rexroad's first assignment of error is as follows:
 {¶ 19} "The trial court erred in granting summary judgment in favor of defendant-appellee, Old Republic Insurance Company and in failing to render summary judgment in favor of plaintiff-appellant, David Rexroad."
 {¶ 20} Appellate review of an entry of summary judgment is on a de novo basis.[2] The de novo standard also applies to review of a trial court's interpretation of a contract.[3]
De novo review requires an appellate court to conduct an independent review of the evidence before the trial court without giving deference to the trial court's decision.[4] While we sustain the trial court's decision, we do not rest our decision solely upon the "course and scope of employment" language ofGalatis. Though our reasons for sustaining the judgment rest on other grounds, this court is permitted to sustain the judgment for any other reason that would justify affirmance.[5]
 {¶ 21} Summary judgment is proper pursuant to Civ.R. 56(C) when: (1) no genuine issue of material fact remains to be litigated, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) construing the evidence in the most favorable light to the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party.[6]
 {¶ 22} Rexroad argues that the language of Westfield Ins.Co. v. Galatis, which restricts "the application of uninsured and underinsured motorist coverage issued to a corporation to employees only while they are acting within the course and scope of their employment, unless otherwise specifically agreed" does not apply to his case.[7] He argues that he is covered under the Old Republic policy for three different reasons: (1) an express provision in the Old Republic policy that covers employees in a covered auto during their personal use, (2) coverage by operation of law, and (3) an express provision that covers him by virtue of an agreement with his employer to do so.
 {¶ 23} To reach the ultimate question of whether Rexroad is entitled to UM/UIM coverage under the Old Republic policy with FirstEnergy, and to address the three reasons why Rexroad argues that his case is distinguishable from the Westfield Ins. Co. v.Galatis case, we must first answer three threshold questions that are presented by the facts of this case. The answers to any one of them can be dispositive of the issue of whether Rexroad was entitled to UM/UIM coverage under the Old Republic policy.
 {¶ 24} The first threshold question can be stated, was Rexroad an employee of Roth Brothers on February 12, 2001, the date of the collision? If he was an employee on that date, then he has standing to assert a claim against the policy. Under a policy endorsement entitled "Employees as Insureds," liability coverage under the policy is extended to employees as follows: "[a]ny `employee' of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs." If he was not an employee, then the inquiry is at an end, and no coverage extends to Rexroad.
 {¶ 25} The second threshold question is: was there a valid rejection of UM/UIM coverage by the named insured? If there was a valid rejection of UM/UIM coverage, then Rexroad's claim is at an end. If there was not a valid rejection, then Rexroad can assert coverage by operation of law.
 {¶ 26} The third threshold question, which assumes that Rexroad was an employee on February 21, 2001, and that UM/UIM coverage extends to him by operation of law, may be stated: can Rexroad pursue a claim pursuant to the "Employees as Insureds" endorsement where it is clear that he was not acting within the scope of his employment on the date of the collision?
 {¶ 27} With respect to whether Rexroad was an employee on the date of the collision, there are legitimate arguments to be made on both sides as to whether he was an employee on that date. He was not on the payroll and was in laid-off status from his company. However, he did return to work to attend seminars and training after the collision. Moreover, the employer wrote to him and other employees three months after the collision, in a communication addressed to "all employees assigned to drive company vehicles," with instructions regarding current registration for the company vehicle and what to do in case of an accident. Because he continued to have the company truck in his possession at his residence, with the consent of his employer, it is reasonable to assume that Rexroad, though laid off, was subject to being recalled to active status with his employer when work became available. Thus, his status as an employee remained unchanged, both before and after the collision.
 {¶ 28} A corollary issue arises if Rexroad was an employee and an insured on the day in question, which is whether UM/UIM coverage should have been offered to him. Because "the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties,"[8] we look to the version of R.C.3937.18 in effect on June 30, 1999, the inception date of the policy:
 {¶ 29} "No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless both of the following coverages are offered to persons insured under the policy for loss due to bodily injury or death suffered by such insureds:
 {¶ 30} "(1) Uninsured motorist coverage, * * *
 {¶ 31} "(2) Underinsured motorist coverage, * * *."
 {¶ 32} A similar issue was presented to the Seventh Appellate District, which concluded on the authority of Westfield Ins. Co.v. Galatis as follows:
 {¶ 33} "The statute only required that UIM coverage be offered to, `persons insured under the policy.' (Emphasis added.) According to Galatis, `whether someone is insured under an insurance policy should not be interpreted in favor of one who was not a party to the contract. * * * The plaintiff who is not a party to the insurance contract is not in a position to urge a construction of the contract that would be detrimental to both parties to the contract.'"[9]
 {¶ 34} Thus, in this case, Rexroad was not a party to the Old Republic policy and, for this reason, did not have a right to insist that UM/UIM coverage be offered to him.
 {¶ 35} With respect to the second threshold question, whether a valid rejection of UM/UIM coverage was accomplished, it is likewise subject to countervailing arguments. On the one hand, a written offer of UM/UIM coverage was made in writing to the named insured, and an unequivocal rejection on that form was made by a duly authorized person. The offer itself, however, does not contain any premium information that would inform the insured how much it would cost to accept UM/UIM. Nor is there any other evidence of a brief description regarding the premium having been furnished to the insured. The Hollon case, decided by the Supreme Court of Ohio in 2004, held that even if the form evidencing the rejection of UM/UIM coverage did not contain the necessary elements for a valid offer of UM/UIM coverage (a description of the coverage, the premium for the coverage, and the coverage limits), it was possible to satisfy the requirements by the introduction of other evidence.[10] However, that court did not abrogate its previous holding in the Linko case, which held that the offer of UM/UIM coverage must set forth "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits."[11] Thus, where a written offer of UM/UIM coverage does not contain all the required elements, and no other evidence is introduced to show otherwise, Linko still applies and the rejection is invalid.[12] If the rejection is invalid, Rexroad argues, then UM/UIM coverage arises by operation of law.
 {¶ 36} A further discussion is called for to determine if the rejection was invalid.
 {¶ 37} FirstEnergy argues that, in response to a written offer of UM/UIM insurance from Old Republic, it executed a rejection form. The written offer "explained not only the purpose of UM/UIM coverage but also the various levels at which it was available." The rejection form was signed by Thomas J. McDonnell on June 30, 1999. FirstEnergy further argues that unrebutted affidavits submitted with its motion for summary judgment "establish beyond doubt that FirstEnergy received a meaningful offer and executed an informed, Hollon-compliant rejection." We disagree.
 {¶ 38} Clearly, the offer of UM/UIM insurance does not set forth the premium information for the coverage being applied for and, therefore, does not comply with the rule of the Linko case that the offer of UM/UIM coverage set forth "a brief description of the coverage, the premium for that coverage, and an express statement of the UM/UIM coverage limits."[13] Nevertheless, FirstEnergy argues, it submitted "other evidence" in the form of affidavits to support the validity of its rejection of UM/UIM coverage. The affidavits were executed by Thomas J. McDonnell of FirstEnergy and Michael Weber of Old Republic. An examination of these affidavits reveals that neither affidavit speaks to the failure of Old Republic's written offer of UM/UIM coverage to provide premium information for the coverage being applied for and, therefore, falls short of the Linko requirements. Even though the rejection form and the affidavits satisfy that part of the Hollon syllabus that provides, "[o]nce a signed rejection is produced, the elements of the offer may be demonstrated by extrinsic evidence;"[14] the Linko requirements still have vitality. Thus, the other part of the Hollon syllabus states:
 {¶ 39} "A signed, written rejection of uninsured/underinsured motorist coverage is valid under the H.B. 261 version of R.C.3937.18 if it was made in response to an offer that included a brief description of the coverage and the coverage premiums and limits."[15]
 {¶ 40} The rejection form and the "other evidence" introduced by FirstEnergy fall short of the evidence needed to prove a valid rejection form. We conclude, therefore, that Rexroad had UM/UIM coverage by operation of law.
 {¶ 41} With respect to the last threshold question, as to whether the "Employees as Insureds" endorsement will entitle Rexroad to UM/UIM coverage, there is more certainty. This court has previously held, in a case with similar facts, that if an employee was not engaged in furthering the business or affairs of his employer, he may not avail himself of this endorsement:
 {¶ 42} "As demonstrated above, `you' in this context means the Lake County Board of Commissioners, not Dale Anthony. Therefore, Dale Anthony would only be entitled to coverage under this endorsement if the accident occurred while he was engaged in the business or affairs of the Lake County Board of Commissioners. Since it is undisputed in the present case that Dale Anthony was not in the course and scope of his employment with the Lake County Board of Commissioners at the time of the accident, the appellants do not qualify as insureds under this endorsement."[16]
 {¶ 43} We adhere to the decision of the Anthony case and believe that it is controlling with respect to Rexroad's appeal. Rexroad was not driving a company vehicle at the time of the collision, he was not on duty, and he was not otherwise engaged in his employer's business, by his own admission. For these reasons, he is deemed not to have been acting in the course and scope of his employment with Roth Brothers, and cannot avail himself of the "Employees as Insureds" endorsement.[17]
 {¶ 44} Nor are we persuaded by the decision in Moore v.Kemper Ins. Co., a case with similar facts decided by the Fifth Appellate District.[18] The plaintiff in the Moore case was a Bank One employee who was involved in a collision on her way to pick up her daughter from day care. She was driving her own automobile at the time. The UM/UIM rejection form did not meet the Linko requirements, so there was deemed to be UM/UIM coverage by operation of law.[19] The plaintiff based her case for coverage on the identical endorsement, ("Employees as Insureds"), that is present in the instant case. The appellate court interpreted the endorsement to find that plaintiff was an "insured" for purposes of that endorsement. It also based its decision on an ambiguity that was created between the definition of an "insured" in the endorsement and elsewhere in the policy, and referred to it as the "same ambiguity found inScott-Pontzer * * *."[20]
 {¶ 45} We believe that the efficacy of the Moore case is in serious doubt, because it did not consider the fact that the plaintiff was outside her scope of employment at the time of her collision; because it based its decision, at least in part, on the Scott-Pontzer case, a case that has been limited byWestfield Ins. Co. v. Galatis;[21] and because it was decided before the Galatis case, where the issue of whether the employee was injured within the scope of employment was at the very heart of the decision.
 {¶ 46} The final issue raised by Rexroad under this assignment of error tries to discern the intent of the parties, that is, FirstEnergy and Rexroad, with respect to coverage for employees acting outside their scope of employment. As stated inGalatis, "* * * the intent of the parties is reflected in the language used in the policy."[22] Further, "[t]he general intent of a motor vehicle insurance policy issued to a corporation is to insure the corporation as a legal entity against liability arising from the use of motor vehicles."[23] Moreover, "[t]he purpose of a commercial auto policy is to protect the policyholder. * * * Providing uninsured motorist coverage to employees who are not at work or, for that matter, to every employee's family members is detrimental to the policyholder's interests."[24]
 {¶ 47} Rexroad argues, on the one hand, that the language of the policy is "unambiguous," but, on the other hand, says that if this court should find an ambiguity in the language that it should discern Roth Brothers' intent to provide coverage to him even when acting outside the scope of his employment: "it was in the policy holder's [sic] best interest to provide coverage to Rexroad even when he was acting outside the scope of his employment so that there would be no lapse in coverage." This, says Rexroad, would give his employer "maximum protection." Old Republic, however, points out in its argument how unreasonable such an interpretation would be. Not only would it "dramatically increase the risk Old Republic had assumed under the policy," it would increase premiums to be paid by FirstEnergy and, in general, would provide coverage without any corresponding benefit when Rexroad is off duty and either operating his own vehicle or, as here, a passenger in someone else's vehicle. As stated by the court in Galatis, "ambiguities are construed in favor of thepolicyholder, not the claimant."[25] It makes no sense, therefore, to interpret the policy language to find the intent by Roth Brothers to provide coverage to Rexroad while not at work or on duty where Roth Brothers derives no benefit therefrom and, in fact, would be negatively impacted by increased risk and increased premiums.
 {¶ 48} While there may be a scenario in the employer-employee context where the employer provides a company vehicle to an employee and intends that the employee be covered by insurance twenty-fours hours a day, seven days a week, in this case there is no genuine issue of material fact whether FirstEnergy or Roth Brothers intended to cover Rexroad at all times and under all circumstances. The affidavits of Howard Merritt, of Roth Brothers, and Thomas J. McDonnell, of FirstEnergy, make clear that, though the truck was provided to Rexroad for his convenience, neither Roth Brothers nor FirstEnergy ever intended to provide liability insurance or UM/UIM coverage to Rexroad when he was not acting in furtherance of his employer's business. Rexroad's own statement sums up the intent of his employer in providing a truck to him: "[t]he truck was used to travel to and from work and while on the job for Roth Brothers."
 {¶ 49} In sum, even if Rexroad was an employee of Roth Brothers on the date of the collision, and even if the rejection of UM/UIM coverage by FirstEnergy was invalid, Rexroad will not be entitled to UM/UIM coverage by virtue of the "Employees as Insureds" endorsement, because he was not acting within the scope of his employment at the time of the collision. Further, even if Rexroad is correct that Westfield Ins. Co. v. Galatis does not apply to his case because the "Employee as Insureds" endorsement invokes the "absent specific language to the contrary" language from the Westfield syllabus; and even if he is deemed to be an employee of Roth Brothers on the date of the collision; and even if the UM/UIM rejection is invalid and coverage arises by operation of law, he still is precluded from UM/UIM coverage because he was not covered by the "Employees as Insureds" endorsement where he was not acting in furtherance of his employer's business or affairs.
 {¶ 50} Rexroad's first assignment of error is without merit.
 {¶ 51} His second assignment of error reads as follows:
 {¶ 52} "The trial court erred in failing to find Rexroad was an insured under the provision of the policy providing for `additional insured where required under contract or agreement.'"
 {¶ 53} In this assignment of error, Rexroad is arguing that he is an "insured" pursuant to the terms of another endorsement in the Old Republic policy. The endorsement in question is entitled "Additional Insured Where Required Under Contract or Agreement," and provides in pertinent part:
 {¶ 54} "* * * WHO IS AN INSURED of [Ohio coverage form]. D.1 of Form A 140 is amended to include as an Insured any person or organization for whom you have agreed under written contract, agreement or permit to provide insurance."
 {¶ 55} By the terms of this endorsement, subsection D.1 of the form referred to (Form A 140) changes the definition of "who is insured" from "you are an insured for any covered auto" to now "include as an insured any person or organization for whom you have agreed under written contract, agreement or permit to provide insurance." Thus, this endorsement expands coverage from "you," meaning FirstEnergy or its subsidiaries, to any person or organization with whom FirstEnergy or Roth Brothers has a written contract, agreement, or permit to provide insurance. Rexroad argues that Roth Brothers had expressly provided him with liability insurance with respect to the truck it parked in his driveway. The Ohio Insurance Identification Card it issued to him is evidence of the express provision of insurance. Moreover, argues Rexroad, even if he is found not to be an employee as of the date of the collision, he is still a party to the "agreement" to provide insurance to him with respect to the truck in his driveway. He is, therefore, according to this argument, an "additional insured" for purposes of this endorsement. Old Republic counters that the decision by Roth Brothers to provide insurance for the truck in Rexroad's driveway was a unilateral decision on its part, and did not result from any "agreement" between Roth Brothers and Rexroad. It further argues that the endorsement in question is not intended for persons such as Rexroad, but for third party contractors with whom FirstEnergy or Roth Brothers are contracting for work, typically construction work. It cites the case of St. Thomas Hosp. Med. Ctr. v. LibertyMut. Ins. Co. as an example of a case where such an endorsement was given a judicial interpretation.[26] This "additional insured" endorsement is useful in the context of construction work, argues Old Republic, where a subcontractor is required to obtain insurance in order to make sure the prime contractor is covered, and, thus, where an "agreement" to provide insurance exists. It was not intended for the employer-employee context where the employer parks its truck in the employee's driveway.
 {¶ 56} The general intent of an auto insurance policy issued to a corporation is to insure the entity against liability arising from the operation of motor vehicles, and the purpose of it is to protect the policyholder.[27] It is not reasonable to interpret the endorsement in question as Rexroad argues and still be consonant with the general intent and purpose of an auto insurance policy. In such a scenario, the policyholder is not insured against liability and is not protected; instead, it is saddled with unknown and unanticipated risks whose dimensions are infinite. There is no evidence the policyholder could have intended such a result with the endorsement in question.
 {¶ 57} Rexroad's second assignment of error is without merit.
 {¶ 58} For the reasons indicated, the judgment of the trial court is affirmed.
Christley, J., Ret., Eleventh Appellate District, sitting by assignment, concurs,
O'Toole, J., concurs in judgment only.
[1] Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, at ¶ 2.
[2] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105.
[3] Clem v. Steiner, 11th Dist. No. 2002-P-0056, 2003-Ohio-4865, at ¶ 15.
[4] Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711.
[5] See Agricultural Ins. Co. v. Constantine (1944),144 Ohio St. 275, 284.
[6] Zivich v. Mentor Soccer Club, Inc. (1998),82 Ohio St.3d 367, 369-370.
[7] Westfield Ins. Co. v. Galatis, supra, at ¶ 2.
[8] Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, syllabus.
[9] Medure v. Medure, 7th Dist. No. 2002-CO-63,2004-Ohio-3039, at ¶ 40.
[10] Hollon v. Clary, 104 Ohio St.3d 526, 2004-Ohio-6772, syllabus.
[11] Linko v. Indemn. Ins. Co. of N. Am. (2000),90 Ohio St.3d 445, 449.
[12] Hollon v. Clary, supra, at ¶ 12-14.
[13] Linko v. Indemn. Ins. Co. of N. Am., supra, at 449.
[14] Hollon v. Clary, supra, syllabus.
[15] Id.
[16] (Citations omitted.) Anthony v. Titus, 11th Dist. No. 2003-L-068, 2004-Ohio-3193, at ¶ 8.
[17] See Acree v. CNA Ins. Cos., 1st Dist. No C-020710, 2003-Ohio-3043, at ¶ 10, and Tharp v. Berdanier, 9th Dist. No. 21473, 2003-Ohio-6589, at ¶ 29.
[18] Moore v. Kemper Ins. Co., 5th Dist. No. 02 CAE 04 018, 2002-Ohio-5930.
[19] Id. at ¶ 20.
[20] Id. at ¶ 26, referring to Scott-Pontzer v. Liberty Mut.Fire Ins. Co. (1999), 85 Ohio St.3d 660.
[21] Westfield Ins. Co. v. Galatis, supra, paragraph two of the syllabus.
[22] Id. at ¶ 11.
[23] Id. at ¶ 20, citing King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, 211.
[24] (Citations omitted.) Id. at ¶ 37.
[25] (Emphasis in original.) Id. at ¶ 35.
[26] St. Thomas Hosp. Med. Ctr. v. Liberty Mut. Ins. Co.
(Dec. 15, 1993), 9th Dist. No. 16249, 1993 Ohio App. LEXIS 6141.
[27] Westfield Ins. Co. v. Galatis, supra, at ¶ 20 and ¶ 37.