OPINION
{¶ 1} This matter comes before the court on remand from the Supreme Court of Ohio, which reversed our earlier decision in this case on the authority of Hollon v. Clary,104 Ohio St.3d 526, 2004-Ohio-6772, 820 N.E.2d 881, and remanded for further proceedings.
 {¶ 2} In 2002, Jessica Evans suffered injuries when she was involved in a single-car accident while driving with her boyfriend, Travis Wallen. At the time of the accident, Jessica's mother, Carol Evans, was the named insured on an umbrella policy issued by Cincinnati Insurance Company ("CIC"). Jessica was also an insured under the policy. This insurance policy was subject to the uninsured/underinsured motorist ("UM/UIM") coverage requirements then set forth at R.C. 3937.18, which required insurance companies to offer and obtain a written rejection of UM/UIM coverage on automobile insurance policies and certain umbrella policies. On the "Application for Excess Uninsured/Underinsured Motorist Coverage" completed by Carol Evans when the policy was issued, she had checked a box next to a line that read "I reject Excess Uninsured/Underinsured Motorists coverage under this policy."
 {¶ 3} With respect to waivers of UM/UIM coverage, the supreme court held in 2000 that, in order to have a valid rejection of UM/UIM coverage under R.C. 3937.18(C), the insurance provider must have made a meaningful written offer of UM/UIM coverage.Linko v. Indemn. Ins. Co. of N. Am., 90 Ohio St.3d 445,2000-Ohio-92, 739 N.E.2d 338, ¶ 10. A meaningful offer must inform the insured of the availability of UM/UIM coverage, set forth the premium for that coverage, and include a brief description of the coverage, including its limits. Id. It is undisputed that the form completed by Evans, standing alone, did not comply with the requirements of Linko in at least two respects.
 {¶ 4} In 2002, the Evanses filed a complaint against CIC seeking to recover under the umbrella policy. On May 16, 2003, CIC filed a motion for summary judgment against the Evanses on the basis that Carol Evans had validly rejected UM/UIM coverage in her umbrella liability policy. CIC relied on Evans's deposition, in which she discussed the fact that she had worked as an insurance agent for many years, and the deposition of one of Evans's co-workers who had prepared the umbrella policy for her. The crux of CIC's argument was that, as an insurance agent, Evans had been well aware of what UM/UIM coverage entailed and what the limits of the coverage were. CIC also asserted that Evans knew, should have known, or could have easily looked up the premiums applicable to that coverage. On May 20, 2003, the Evanses moved for partial summary judgment against CIC, claiming that there was no genuine issue of material fact that CIC had failed to make a proper offer of UM/UIM coverage, and therefore they could not have properly rejected such coverage.
 {¶ 5} In June 2003, the trial court concluded that the evidence presented by CIC did not establish that Evans had clearly understood the effect of her rejection of the UM/UIM coverage. Because CIC had failed in its legal obligation to provide Evans with the information necessary to make an express, knowing rejection of UM/UIM coverage, the trial court concluded that she had not, as a matter of law, rejected that coverage. Thus, the court granted summary judgment in favor of Evans and denied CIC's motion for summary judgment. CIC appealed from the trial court's judgment.
 {¶ 6} In October 2003, while CIC's appeal was pending, we decided a case in which similar issues of compliance with Linko
were at issue. In Hollon v. Clary, 155 Ohio App.3d 195,2003-Ohio-5734, 800 N.E.2d 68, we held that the elements of a valid offer of UM/UIM coverage, as set forth in Linko, must appear within the four corners of the insurance document and, if they do not, coverage arises by operation of law. In Hollon,
the premium had not been included in the written offer of UM/UIM coverage. Under the facts of that case, we held that UM/UIM coverage arose by operation of law notwithstanding the existence of an affidavit in which the insured admitted having been told the amount of the premium before rejecting the offer. We concluded that, because the offer of coverage was improper — i.e., it did not include the required Linko elements — the rejection could not have been proper.
 {¶ 7} In March 2004, we decided CIC's appeal in Evans v.Wallen, Montgomery App. No. 20171, 2004-Ohio-1166. Following our decision in Hollon, we rejected CIC's attempt to use extrinsic evidence to establish that Carol Evans had properly waived UM/UIM coverage notwithstanding the absence from the UM/UIM form of at least two of the Linko elements. CIC appealed to the supreme court, which agreed to hear the discretionary appeal. Evans v.Wallen, 103 Ohio St.3d 1408, 2004-Ohio-4068.
 {¶ 8} In December 2004, the supreme court reversed our decision in Hollon. Hollon v. Clary, 104 Ohio St.3d 526,2004-Ohio-6772, 820 N.E.2d 881. It held that the Linko
requirements were "a means to an end * * * [and] were chosen to ensure that insurers make meaningful offers" that allow an insured to make an express, knowing rejection of UM/UIM coverage. Id. at ¶ 13. It instructed that courts should not elevate form over substance in determining whether the Linko elements had been established or ignore the expressed intent of the parties to a contract. Id. Accordingly, the court found that extrinsic evidence may be considered in determining whether the insured made an express, knowing rejection of UM/UIM coverage. Id. at ¶ 14.
 {¶ 9} On March 2, 2005, the supreme court reversed our prior decision in this case on the authority of its decision inHollon and remanded the matter to this court for further proceedings. Evans v. Wallen, 105 Ohio St.3d 89, 2005-Ohio-571,822 N.E.2d 794. Accordingly, we will reexamine the trial court's judgment and our affirmance of that judgment.
 {¶ 10} The trial court did consider extrinsic evidence in evaluating whether Carol Evans had effectively waived UM/UIM coverage. The trial court concluded that, "at numerous points during her deposition, [Evans] evinced confusion, mistake, and a lack of clear understanding" of some of the components of UM/UIM coverage. She also stated that she had discussed neither the coverage nor the premiums with anyone from the company. Although she acknowledged that she could have looked up the premiums in the appropriate manual, there was no evidence that she had done so. The trial court concluded that Evans "rejected something completely different than what she thought she was rejecting" and that her "lack of clear understanding" had not been rebutted by other extrinsic evidence. As such, the trial court concluded that Evans's rejection of coverage had been invalid and that UM/UIM coverage had arisen by operation of law.
 {¶ 11} In our prior decision, we affirmed the trial court's judgment, albeit for different reasons. We held that UM/UIM coverage arose by operation of law because the "four corners" of the parties' agreement had not established a valid rejection of UM/UIM coverage. Based on the supreme court's holding inHollon, the trial court's approach was the better one. Thus, as long as the extrinsic evidence supported the trial court's conclusion that Evans had not made an informed rejection of the UM/UIM coverage, that decision was proper.
 {¶ 12} Evans testified that she worked for insurance agencies for many years before her daughter's accident and that part of her job was to explain insurance coverage. She had a license to sell insurance and remembered taking one class that dealt specifically with automobile insurance, including UM/UIM coverage. She testified that she did not recall what was discussed at that class. In her work, she dealt with automobile policies issued by CIC, but the majority of her work was with homeowners' insurance. When asked to explain UM/UIM coverage, she stated that it was designed to pay medical costs if an insured was injured or killed by someone who did not have adequate insurance. She could not pinpoint how she had gotten the impression that UM/UIM coverage only covered medical expenses. She understood excess UM/UIM coverage to be coverage beyond the limits of one's other policies. In her deposition, Evans stated that it was still her understanding that UM/UIM coverage only covered medical expenses, indicating her confusion at counsel's suggestion that it covered other things, although she acknowledged that UM/UIM coverage "was constantly changing." Evans indicated that she had not understood what the term "compensatory damages" as referenced in the UM/UIM coverage form used by the Insurance Service Office, a service that handles many insurance company forms, and that she still did not understand what it meant at the time of her deposition. When challenged about her lack of understanding of the policies she sold, she stated that her job had been to sell to agents, and those agents had been responsible for selling the policies. She also stated that she had "no idea" how much would have been charged for the excess UM/UIM coverage that she rejected, although she could have done her own research to find the amount.
 {¶ 13} Terri Young, a co-worker of Evans, testified that she had prepared the insurance documents for Evans's umbrella policy. Young did not recall giving Evans any information about the coverage she was accepting or rejecting beyond what was included in the insurance forms and did not recall whether she had told Evans what the premium would be. Young pointed out that Evans had access to this information in her CIC manuals, however.
 {¶ 14} The insurer bears the burden to show an express written offer and rejection, in compliance with Linko.Schumacher v. Kreiner, 88 Ohio St.3d 358, 360, 2000-Ohio-344,725 N.E.2d 1138, citing Gyori v. Johnston Coca-Cola BottlingGroup, Inc., 76 Ohio St.3d 565, 1996-Ohio-358, 669 N.E.2d 824. Here, it is undisputed that the insurance documents failed to satisfy the elements of a valid offer and rejection. In our view, the trial court did not err in concluding that the extrinsic evidence failed to create a genuine issue of material fact that Evans had knowledge of the elements of a valid offer of UM/UIM coverage. For example, there is no evidence that Evans knew the premium for the UM/UIM coverage that she purportedly rejected. Although Evans and Young testified that Evans had had access to this information at her office, the evidence fails to create a genuine issue of material fact that Evans had been informed — by her own research or otherwise — of the premium for the UM/UIM coverage. As such, her rejection of such coverage was invalid, and summary judgment in Evans's favor was appropriate.
 {¶ 15} Having reconsidered the trial court's judgment in light of the supreme court's holding in Hollon v. Clary, the judgment of the trial court will be affirmed.
 . . . . . . . . . .
Brogan, J., concurs.