OPINION
{¶ 1} This is an appeal by Plaintiffs, Jerome R. Baxter and his daughter, Holly Baxter, from a grant of summary judgment in favor of Defendant, USAA Casualty Insurance Company ("USAA").
 {¶ 2} On August 1, 1994, Holly Baxter was involved in a *Page 2 
motor vehicle accident in Indiana where she was attending Indiana University. The accident was caused by an uninsured or underinsured motorist. At the time of the accident, Jerome Baxter had a basic automobile policy with USAA that provided for uninsured/underinsured motorist ("UM/UIM") coverage in the amount of $300,000 per person or $500,000 per occurrence. Jerome Baxter also had a personal umbrella policy with USAA. He originally declined UM/UIM coverage under the umbrella policy on October 20, 1986, and again rejected UM/UIM coverage on October 22, 1993.
 {¶ 3} Jerome and Holly Baxter made a timely UM/UIM claim under the primary automobile liability policy and the umbrella policy. USAA determined that Holly was an insured under the primary automobile policy and that she was entitled to the bodily injury limits of $300,000 pursuant to the policy. But USAA denied the claim for UM/UIM coverage under the umbrella policy because Jerome Baxter had rejected such coverage.
 {¶ 4} On March 1, 2005, the Baxters commenced an action against USAA for breach of contract and a declaratory judgment seeking UM/UIM coverage under the umbrella policy. USAA answered, denying UM/UIM coverage under the umbrella policy, and filed a counterclaim for declaratory judgment. After the completion of discovery, both parties filed motions for *Page 3 
summary judgment. The trial court referred USAA's request for declaratory judgment to a magistrate for trial.
 {¶ 5} On March 23, 2006, the magistrate found that USAA made a valid offer of UM/UIM coverage to Jerome Baxter and that he made a valid rejection of that offer. Therefore, the magistrate found that the Baxters did not have UM/UIM coverage under the personal umbrella policy. Based on this finding, the magistrate granted USAA's motion for summary judgment.
 {¶ 6} The Baxters filed timely objections to the magistrate's decision. The trial court overruled the objections on September 28, 2006. The Baxters filed a timely notice of appeal.
 {¶ 7} ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ERRED WHEN IT FOUND THAT USAA PRESENTED SUFFICIENT EVIDENCE TO SHOW THAT IT PROPERLY OFFERED UM/UIM COVERAGE TO JEROME BAXTER EVEN THOUGH USAA FAILED TO SET FORTH THE PREMIUM ON ITS FORM OFFERING SUCH COVERAGE, AND THAT IT PRESENTED SUFFICIENT EVIDENCE THAT JEROME BAXTER MADE A KNOWING REJECTION OF THE UM/UIM COVERAGE."
 {¶ 9} Holly Baxter was involved in an automobile accident on August 1, 1994. The umbrella insurance policy between James Baxter and USAA was executed prior to this date. "For the purpose of determining the scope of *Page 4 
coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties."Ross v. Farmers Ins. Group of Cos., 82 Ohio St.3d 281, 1998-Ohio-381, at syllabus.
 {¶ 10} The version of R.C. 3937.18(C) in effect at the time Jerome Baxter signed the October 22, 1993 rejection of coverage provided that "The named insured may only reject or accept both coverages offered under division (A) of this section. . . ."[1] It is well-settled that this version of R.C. 3937.18 requires insurance companies to offer UM/UIM coverage with every automobile liability policy issued in Ohio.Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St. 3d 565, 567, 669 N.E.2d 824. An insurer's failure to do so results in the insured acquiring UM/UIM coverage by operation of law. Id. UM/UIM coverage may be eliminated or reduced from a vehicle insurance policy, however, if an insured makes an express and knowing rejection of such coverage. R.C. 3937.18(C); Gyori. The rejection must be in writing and received by the insurer prior to the commencement of the policy year. Gyori, *Page 5 
at paragraph two of the syllabus. If UM/UIM coverage is not expressly rejected, coverage is provided by operation of law. Abate v. PioneerMut. Cas. Co. (1970), 22 Ohio St.2d 161, 258 N.E.2d 429, at paragraph two of the syllabus.
 {¶ 11} There must first be a valid written offer of UM/UIM coverage before there can be a valid rejection. Shirley v. Nationwide Ins.Co. (2001), 141 Ohio App.3d 189, 193, 750 N.E.2d 637; Gyori, at paragraph one of the syllabus. "To satisfy the offer requirements of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer." Linko v. Indemnity Ins. Co. of North America, 90 Ohio St.3d 445, 447-48, 2000-Ohio-92. The Linko requirements are equally as applicable to umbrella policies as they are to motor vehicle liability policies. Kasson v. Goodman, Lucas App. No. L-01-1432, 2002-Ohio-3022, at _59 (citation omitted).
 {¶ 12} The insurer bears the burden to show an express, written offer and rejection, in compliance with Linko. Schumacher v. Kreiner,88 Ohio St.3d 358, 360, 2000-Ohio-344, citing Gyori. USAA argues that it carried this burden, because the 1993 rejection form signed by Jerome Baxter contained a complete and detailed explanation of UM/UIM coverage, a detailed explanation of the coverage limits available for purchase, and the basic premium cost for *Page 6 
 {¶ 13} The Baxters argue that the rejection of UM/UIM coverage under the umbrella policy was not a valid rejection of coverage, because USAA failed to set forth the premium for the UM/UIM coverage. According to the Baxters, the "basic cost" of coverage provided by USAA was insufficient to inform Jerome Baxter of the premium, because the premium calculation takes into account additional factors, such as the number of vehicles, the number of persons, and the territory of the insured vehicles.
 {¶ 14} The trial court found that although the premium quoted in the rejection form was not exact, it substantially complied withLinko. The rejection form provided that: "The basic cost of UM/UIM is $65 per vehicle. This rate, however, is subject to change without notice and will vary according to your Umbrella UM/UIM limit, the limits on your primary policies, and the number of automobiles insured."
 {¶ 15} In determining whether the "basic cost" of UM/UIM coverage is sufficient to satisfy Linko's requirement to "set forth the premium for the coverage", we must keep in mind that "[t]he Linko requirements are a means to an end. They were chosen to ensure that insurers make meaningful offers. A `meaningful offer' is `an offer that is an offer in substance and not just in name' that `allow[s] an insured to make an express, knowing rejection of [UM/UIM] coverage.'" Hollon v. Clary, *Page 7 104 Ohio St.3d 526, 2004-Ohio-6772, at f 13, quoting Linko,90 Ohio St.3d at 449. Although a written offer, per se, does not satisfy all of theLinko requirements, the Supreme Court has held that we should not "elevate form over substance or ignore the expressed intent of the parties to a contract." Hollon, 2004-Ohio-6772, at f 13. We find that the basic cost information provided by USAA "set forth the premium for UM/UIM coverage," as required by Linko, and was sufficient to allow Jerome Baxter to make an express, knowing rejection of UM/UIM coverage.
 {¶ 16} The Baxters argue that the holding in Hollon does not apply to policies of insurance that pre-date H.B. 261 (September 3, 1997), because Hollon involved the presumption created by H.B. 261, a presumption that is not in the version of R.C. 3937.18 that is relevant to the current dispute. According to the Baxters, the four corners of the insurance contract must satisfy the Linko requirements and the court cannot consider extrinsic evidence in determining whether a valid offer and rejection of UM/UIM coverage were made.
 {¶ 17} Arguably, the Baxters are correct that Hollon's holding regarding the use of extrinsic evidence does not apply to pre-H.B. 261 policies of insurance. But we do not believe that the Court's discussion of meaningful offers and elevating form over substance should apply only to post-H.B. 261 policies of insurance. Indeed, the Court noted thatLinko's requirements are applicable to both the S.20 version of R.C. 3927.18 and the H.B. 261 version. *Page 8 Hollon, 2004-Ohio-6772, at _9, citing Kemper v. Michigan Millers Mut.Ins. Co., 98 Ohio St.3d 162, 2002-Ohio-7101. Therefore, we read this language in Hollon as a clarification of the Court's holding inLinko, which applies to pre-H.B. 261 insurance policies as well as post-H.B. 261 insurance policies.
 {¶ 18} The Baxters cite Wiencek v. Higgins, Guernsey App. No. 05CA38,2006-Ohio-5680, in support of their argument that Hollon does not apply to this case. The Wiencek court, however, focused on whether extrinsic evidence could be used to establish a valid offer in pre-H.B. 261 cases rather than on whether basic cost information satisfies theLinko requirement to set forth the premium. We do not believe that extrinsic evidence even needs to be considered in determining whether a valid offer and rejection were made. Rather, the basic cost of coverage information contained in the rejection form signed by Jerome Baxter is sufficient as a matter of law to satisfy the premium requirement established in Linko.
 {¶ 19} The assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.
(Hon. George M. Glasser, retired from the Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] Similarly, the version of R.C. 3937.18(C) in effect from October 20, 1994 (145 v S20) to September 2, 1997, provided that "The named insured may only reject or accept both coverages offered under division (A) of this section." Effective September 3, 1997 (147 v H261), R.C. 3937.18(C) was amended to provide that "A named insured's or applicant's rejection of both coverages as offered under division (A) of this section . . . shall be in writing and shall be signed by the named insured or applicant. A named insured's or applicant's written, signed rejection of both coverages shall create a presumption of an offer of coverages consistent with division (A) of this section and shall be binding on all other named insureds. . . ." Effective October 31, 2001 (149 v S97), R.C. 3937.18 no longer requires a written offer, selection, or rejection form for uninsured or underinsured motorist coverage. *Page 1