OPINION
{¶ 1} Plaintiffs-appellants, Kathy Alicea and her husband, Francisco Alicea, Jr., appeal the judgment entry of the Trumbull County Court of Common Pleas, in which the trial court granted, defendant-appellee, Allstate Insurance Company's Motion for *Page 2 
Summary Judgment and found that uninsured/underinsured motorist ("UM/UIM") coverage does not arise by application of law in the instant matter. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} Kathy Alicea originally purchased a policy of automobile insurance coverage from Allstate Insurance Company under her maiden name, Kathy Jones, with bodily injury liability limits of $15,000 per person and $30,000 per accident. On April 4, 2000, Jones requested UM/UIM coverage for bodily injury with the same limits. On September 7, 2001, Jones signed a form stating that she had read a description of the UM/UIM coverage and a chart showing premiums for various levels of coverage. She also signed affirming she was rejecting UM/UIM coverage for bodily injury. The form contained a clause informing Jones the rejection of UM/UIM coverage "will apply to all future renewals, continuations, or changes in [her] policy unless [she] notif[ies] Allstate otherwise in writing."
 {¶ 3} At some unknown later date, Jones married Francisco Alicea, Jr. Her insurance policy continued to renew under the name Kathy Alicea. Kathy Alicea increased her limits of liability coverage on August 8, 2005, to $100,000 per person and $300,000 per occurrence. At no point did Kathy Alicea notify Allstate to revoke her rejection of UM/UIM coverage.
 {¶ 4} On November 4, 2005, Kathy and Francisco Alicea were involved in an automobile accident with Mark Beckinger. Francisco Alicea was driving his wife's car, who was also a passenger, southbound on Route 46 in Howland Township in Trumbull County, Ohio, when they were struck by Beckinger. The Aliceas claim they were injured and incurred medical expenses in excess of $25,000. The Aliceas have sought *Page 3 
UM/UIM coverage from Allstate for these claims. The claims against Beckinger are not at issue in this appeal.
 {¶ 5} The Aliceas and Allstate respectively moved for partial summary judgment and for summary judgment on the issue of whether or not UM/UIM coverage arises by law. On January 1, 2008, the Trumbull County Court of Common Pleas granted Allstate's motion for summary judgment, denied the Aliceas' motion for summary judgment, and found that UM/UIM coverage does not arise by application of law in the present case.
 {¶ 6} The Aliceas timely appeal and raise the following assignment of error:
 {¶ 7} "[1.] The trial court erred in awarding summary judgment to appellee, and in denying partial summary judgment to appellants."
 {¶ 8} Appellee/cross-appellant, Allstate, raises the following cross-assignment of error:
 {¶ 9} "[1.] The trial court erred in failing to determine that uninsured/underinsured motorist coverage cannot arise by operation of law."
 {¶ 10} An appellate court's review of the trial court's decision to grant or deny a motion for summary judgment is de novo, as it only involves questions of law. Bertrand v. Lax, 11th Dist. No. 2004-P-0035,2005-Ohio-3261, at ¶ 13; Landmark Ins. Co. v. Cincinnati Ins. Co., 11th Dist. No. 2000-P-0093, 2001-Ohio-4311, at ¶ 9, citing Village of Graftonv. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment is proper when three conditions are satisfied: 1) there is no genuine issue of material fact; 2) the moving party is entitled to judgment as a matter of law; and 3) reasonable minds can come to but one conclusion, and that conclusion is adverse to *Page 4 
the party against whom the motion for summary judgment is made. Civ. R. 56(C); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389;Harless v. Willis Day Warehousing Co. (1976), 54 Ohio St.2d 64, 66. This court applies the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336.
 {¶ 11} In their sole assignment of error, the Aliceas argue Kathy Alicea's rejection of UM/UIM coverage is invalid because Allstate's offer of the coverage did not expressly state the $100,000/$300,000 UM/UIM coverage limits.
 {¶ 12} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Smith v. Cincinnati Ins.Co., 11th Dist. No. 2001-L-114, 2002-Ohio-7343, at ¶ 10 citing Ross v.Farmers Ins. Group of Cos., 82 Ohio St.3d 281, 1998-Ohio-381, at syllabus.
 {¶ 13} On September 7, 2001, when Kathy Alicea signed the form rejecting UM/UIM coverage, under R.C. 3937.18(A)[1], Ohio law prohibited an insurer from issuing a policy of automobile liability insurance unless the insurer offered, in writing, UM/UIM coverage. UM/UIM coverage could be excluded from an automobile liability insurance policy only by means of a "meaningful" written offer and rejection of that offer by the named insured. Linko v. Indem. Ins. Co. of N.Am., 90 Ohio St.3d 445, 449, 2000-Ohio-92, citing Gyori v. JohnstonCoca-Cola Bottling Group, Inc., 76 Ohio St.3d 565, 568, *Page 5 1996-Ohio-358. For the written offer to be "meaningful," and the rejection to be valid, it had to contain the following three elements: (1) it must describe the coverage; (2) it must list the premium costs of the UM/UIM coverage; and, (3) it must expressly state the UM/UIM coverage limits. Id. Under the former R.C. 3937.18(C), absent the written offer and rejection of UM/UIM coverage before the time such coverage began, an insured acquired UM/UIM coverage by operation of law in the same amount as any liability coverage provided in the policy.Schumacher v. Kreiner, 88 Ohio St.3d 358, 359-360, 2000-Ohio-344.
 {¶ 14} The form Kathy Jones signed consisted of three pages, collectively entitled "Uninsured Motorists Insurance Selection Form". The form clearly states the UM/UIM coverage limits. It states, in bold, that "Ohio law mandates uninsured motorist's coverage equal to that of liability coverage unless rejected or otherwise requested. Therefore, your policy will be issued with [UIM] for bodily injury in limits equal to your Bodily Injury Liability Insurance (Coverage AA) limits unless you indicate a different option * * * your coverage limits * * * may not exceed your Coverage AA limits." The line following states "[y]our Coverage AA limits are: $____ Per Person/ $____ Per Accident". In each of the lines were handwritten zeros.
 {¶ 15} The Aliceas argue that since Allstate's offer of the coverage does not expressly state the $100,000/$300,000 UM/UIM coverage limits, it is invalid. We disagree.
 {¶ 16} In place of the handwritten zeros for the bodily injury liability coverage (Coverage AA), the form should have stated bodily injury liability limits of $15,000 per person and $30,000 per accident, not $100,000/$300,000 as the Aliceas are claiming, *Page 6 
because Kathy Alicea did not increase her limits of liability coverage until August 8, 2005. Regardless, the form expressly stated that the policy will be issued with UM/UIM for bodily injury in limits equal to the insured's bodily injury liability insurance. The form also listed fifteen different available coverage limits, ranging from $15,000/$30,000 to $2,000,000/$2,000,000. The premium for each level of coverage was separately stated. In addition, the insured had the option of selecting the level of coverage desired, provided it did not exceed the bodily injury liability insurance.
 {¶ 17} Allstate argues that the handwritten zeros "indicat[ed] that limits of zeros [for UM/UIM coverage] were selected." This argument could explain why zeros were written, however, the form intended the amounts for bodily injury liability insurance to be written on the blank lines. The Aliceas argue that since the form "equates [UM/UIM] limits with the liability coverage limits and states those limits to be `$0 Per Person/$0 Per Accident'" there was no meaningful offer within the meaning of Linko. This argument is not a reasonable interpretation of the contract. The form clearly stated that, unless rejected or a different UM/UIM limit was chosen, the policy would be issued with UM/UIM coverage in an amount equal to the underlying liability coverage limits. Kathy Alicea's belief that her underlying bodily injury insurance limits were $0 per person and per accident, when she signed the form, is not reasonable. If this were so, there would be no policy. "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language."Skivolocki v. E. Ohio Gas Co. (1974), 38 Ohio St. 2d 244, at paragraph one of the syllabus.
 {¶ 18} "The Linko requirements are a means to an end. They were chosen to ensure that insurers make meaningful offers. A `meaningful offer' is `an offer that is an *Page 7 
offer in substance and not just in name' that `allow[s] an insured to make an express, knowing rejection of [UM/UIM] coverage.'" Hollon v.Clary, 104 Ohio St.3d 526, 2004-Ohio-6772, at ¶ 13, citingLinko, 90 Ohio St.3d at 449. Even though the bodily injury limits are listed as "$0" per person and per accident on the form, the form clearly informs the insured of the availability of coverage, describes the coverage, sets forth the premiums for coverage from $15,000/$30,000 to $2,000,000, and expressly states the UM/UIM coverage limits will be equal to the bodily injury insurance limits of the insured. Kathy Alicea knowingly rejected the UM/UIM coverage which was set forth in a meaningful offer, thus complying with Linko.
 {¶ 19} The Aliceas' assignment of error is without merit.
 {¶ 20} In their cross-assignment of error, Allstate argues that although the trial court did find that UM/UIM coverage did not arise by operation of law, they erred in failing to determine UM/UIM coveragecannot arise by operation of law.
 {¶ 21} R.C. 2505.22, states that "[i]n connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part." The appellate court is required "to refrain from consideration of errors assigned and argued in the brief of appellee on cross-appeal which, given the disposition of the case by the appellate court, are not prejudicial to the appellee."Pang v. Minch (1990), 53 Ohio St.3d 186, at paragraph eight of the syllabus. Further, courts interpreting R.C. 2505.22 have held that an appellate court may consider assignments of error raised by an appellee solely for the purpose of preventing reversal of the lower court's judgment. See Bryant v. *Page 8 Lawson Milk Co. (1985), 22 Ohio App.3d 69, 70; Parton v. Weilnau (1959),169 Ohio St. 145 at paragraph seven of the syllabus. Such cross-assignments of error have been held to be "only for the limited purpose of preventing the reversal of the judgment under review".Chapman v. Ohio State Dental Bd. (1986), 33 Ohio App.3d 324, 327.
 {¶ 22} Given that the Aliceas' assignment of error is without merit because Kathy Alicea knowingly rejected the UM/UIM coverage and Allstate's cross-assignment of error may only be used to prevent the reversal of the judgment under review, we will not address Allstate's cross-assignment of error.
 {¶ 23} For the foregoing reasons, the Judgment Entry of the Trumbull County Court of Common Pleas, denying the Aliceas' Motion for Partial Summary Judgment, granting Allstate's Motion for Partial Summary Judgment, and finding as a matter of law that UM/UIM coverage does not arise by application of the law in the instant matter, is affirmed. Costs to be taxed against appellants.
COLLEEN MARY O'TOOLE, J., TIMOTHY P. CANNON, J., concurs.
[1] Effective October 31, 2001, the General Assembly amended R.C. 3937.18 to eliminate the statutory requirement for insurers to offer UM/UIM coverage. Presently, an insurer is not required to include UM/UIM coverage in an automobile liability policy. *Page 1